**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

<table>
<tr><td>

CATFISH FARMERS OF AMERICA, *et al.*,

                Plaintiffs,

v.

UNITED STATES,

                Defendant,

       and

CAN THO IMPORT EXPORT SEAFOOD JOINT STOCK COMPANY,

                Defendant-Intervenor.

</td><td>

Before: Hon. Stephen Alexander Vaden, Judge

Court No. 24-00082

</td></tr>
</table>

## ORDER

Upon consideration of motion for summary judgement and memorandum in support filed by Plaintiffs Catfish Farmers of America and individual U.S. catfish processors America's Catch, Inc., Alabama Catfish, LLC d/b/a Harvest Select Catfish, Inc., Consolidated Catfish Companies, LLC d/b/a Country Select Catfish, Delta Pride Catfish, Inc., Guidry's Catfish, Inc., Heartland Catfish Company, Magnolia Processing, Inc. d/b/a Pride of the Pond, and Simmons Farm Raised Catfish, Inc. (collectively, "CFA") and all other papers and proceedings herein, it is hereby

**ORDERED**, that the final results issued by the U.S. Department of Commerce ("Commerce") in the 2021-2022 administrative review of the antidumping duty order on certain frozen fish fillets from the Socialist Republic of Vietnam are remanded for further consideration; and it is further

**ORDERED**, that Commerce on remand shall reconsider its determination not to apply adverse inferences with respect to Can Tho Import Export Joint Stock Company's reporting of packing factors, and it is further

Ct. No. 24-00082

**ORDERED**, that Commerce on remand shall consider on the merits CFA's March 26, 2024 allegation of ministerial errors in the final margin calculations, and it is further

**ORDERED**, that Commerce on remand shall redetermine the separate rate in accordance with its remand determinations as to the two issues specified above.

**SO ORDERED.**

Dated: _____, 2024
       New York, N.Y.                    _____
                                         Hon. Stephen Alexander Vaden, Judge

## IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

| |
|---|
| **CATFISH FARMERS OF AMERICA,** *et al.*,<br><br>     **Plaintiffs,**<br><br>  **v.**<br><br>**UNITED STATES,**<br><br>     **Defendant,**<br><br>  **and**<br><br>**CAN THO IMPORT EXPORT SEAFOOD JOINT STOCK COMPANY,**<br><br>     **Defendant-Intervenor.** |

**Before: Hon. Stephen Alexander Vaden, Judge**

**Court No. 24-00082**

## RULE 56.2 MOTION FOR JUDGEMENT ON THE AGENCY RECORD OF PLAINTIFFS CATFISH FARMERS OF AMERICA, *ET AL.*

Pursuant to Rule. 56.2 of the Rules of the United States Court of International Trade ("CIT"), Plaintiffs Catfish Farmers of America and individual U.S. catfish processors America's Catch, Inc., Alabama Catfish, LLC d/b/a Harvest Select Catfish, Inc., Consolidated Catfish Companies, LLC d/b/a Country Select Catfish, Delta Pride Catfish, Inc., Guidry's Catfish, Inc., Heartland Catfish Company, Magnolia Processing, Inc. d/b/a Pride of the Pond, and Simmons Farm Raised Catfish, Inc. (collectively, "CFA") move for judgment on the agency record regarding the final results of the 2021-2022 administrative review of the antidumping duty order on certain Vietnamese frozen fish fillets, as published in *Certain Frozen Fish Fillets from the Socialist Republic of Vietnam*, 89 Fed. Reg. 18,595 (Dep't Commerce Mar. 14, 2024) (final results and partial rescission of admin. rev.; 2021-2022).

Specifically, CFA respectfully moves that this Court remand the final results to the U.S. Department of Commerce for reconsideration and other action in accordance with the instructions

Ct. No. 24-00082

in the accompanying proposed order. The arguments justifying CFA's motion are set forth in the accompanying opening brief.

Respectfully submitted,

/s/ Maureen E. Thorson
Nazak Nikakhtar, Esq.
Maureen E. Thorson, Esq.
Stephanie M. Bell, Esq.

*Counsel to the Catfish Farmers of America and individual U.S. catfish processors America's Catch, Inc., Alabama Catfish, LLC d/b/a Harvest Select Catfish, Inc., Consolidated Catfish Companies, LLC d/b/a Country Select Catfish, Delta Pride Catfish, Inc., Guidry's Catfish, Inc., Heartland Catfish Company, Magnolia Processing, Inc. d/b/a Pride of the Pond, and Simmons Farm Raised Catfish, Inc.*

Dated: October 15, 2024

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

CATFISH FARMERS OF AMERICA, *et al.,*

                 Plaintiffs,

       v.

UNITED STATES,

                Defendant,

       and

CAN THO IMPORT EXPORT SEAFOOD
JOINT STOCK COMPANY,

             Defendant-Intervenor.

Before:  Hon. Stephen Alexander Vaden,
         Judge

Court No. 24-00082

<u>**OPENING BRIEF OF PLAINTIFFS, CATFISH FARMERS OF AMERICA, *et al.***</u>

**Nazak Nikakhtar, Esq.**
**Maureen E. Thorson, Esq.**
**Stephanie M. Bell, Esq.**

**WILEY REIN LLP**
**2050 M Street, NW**
**Washington, DC 20036**
**(202) 719-7000**

*Counsel to the Catfish Farmers of America and individual U.S. catfish processors America's Catch, Inc., Alabama Catfish, LLC d/b/a Harvest Select Catfish, Inc., Consolidated Catfish Companies, LLC d/b/a Country Select Catfish, Delta Pride Catfish, Inc., Guidry's Catfish, Inc., Heartland Catfish Company, Magnolia Processing, Inc. d/b/a Pride of the Pond, and Simmons Farm Raised Catfish, Inc.*

**October 15, 2024**

Ct. No. 24-00082

## <u>TABLE OF CONTENTS</u>

**Page**

I.    INTRODUCTION ............................................................................................. 1

II.    RULE 56.2 STATEMENT ............................................................................... 1

    A.    The Administrative Determination Under Review ............................... 1

    B.    Issues Presented for Review ................................................................. 1

    C.    Request for Court Order and Relief Sought .......................................... 2

III.    BACKGROUND .............................................................................................. 2

    A.    CASEAMEX's Reporting of Packing Factors ...................................... 2

    B.    CFA's Ministerial Error Allegation ..................................................... 4

    C.    Commerce's Determination of the Separate Rate .................................. 5

IV.    STANDARD OF REVIEW ............................................................................. 5

V.    SUMMARY OF ARGUMENT ....................................................................... 6

VI.    ARGUMENT ................................................................................................... 6

    A.    Commerce Did Not Adequately Explain or Support its Treatment of CASEAMEX's Packing Factors Reporting .................................................. 7

    B.    Commerce's Treatment of CFA's Ministerial Error Allegation Was Unlawful .......................................................................................................... 10

    C.    The Determination of the Separate Rate Should Also Be Remanded .................. 16

VII.    CONCLUSION ................................................................................................ 16

Ct. No. 24-00082

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Dorbest Ltd. v. United States*,
    604 F.3d 1363 (Fed. Cir. 2010)...................................................................13, 14

*Fine Furniture (Shanghai), Ltd. v. United States*,
    182 F. Supp. 3d 1350 ........................................................................................13

*Jacobi Carbons AB v. United States*,
    222 F. Supp. 3d 1159 (Ct Int'l Trade 2017) ...................................................14

*Loper Bright Enters. v. Raimondo*,
    144 S. Ct. 2224 (2024)..........................................................................5, 13, 14

*McCarthy v. Madigan*,
    503 U.S. 140 (1992)..........................................................................................15

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
    463 U.S. 29 (1983)..............................................................................................5

*NTN Bearing Corp. v. United States*,
    74 F.3d 1204 (Fed. Cir. 1995).................................................................10, 14, 15

*QVD Food Co., Ltd. v. United States*,
    658 F.3d 1318 (Fed. Cir. 2011)........................................................................12

*SGL Carbon v. United States*,
    819 F. Supp. 2d 1352 (Ct Int'l Trade 2012) ...................................................10

**Statutes**

19 U.S.C. § 1516a(b)(1).............................................................................................5

19 U.S.C. § 1675(h) ...................................................................................... *passim*

19 U.S.C. § 1677a.......................................................................................................2

19 U.S.C. § 1677b(a) .................................................................................................2

19 U.S.C. §1677b(b) ..................................................................................................2

19 U.S.C. § 1677b(c)(1).........................................................................................3, 7

19 U.S.C. § 1677e.......................................................................................................3

Ct. No. 24-00082

19 U.S.C. § 1677e(a) .................................................................................................8

19 U.S.C. § 1677e(b) .................................................................................................8

19 U.S.C. 1677f-1(d) ................................................................................................2

**Other Authorities**

19 C.F.R. § 351.309(c)(2) ........................................................................................11

19 C.F.R. § 351.224 ...................................................................................................4

19 C.F.R. § 351.224(c)(1) ........................................................................................11

19 C.F.R. § 351.224(c)(3) ........................................................................................15

*Certain Frozen Fish Fillets from the Socialist Republic of Vietnam*,
    89 Fed. Reg. 18,595 (Dep't Commerce Mar. 14, 2024) ......................................1

*Ferrosilicon from Brazil*,
    62 Fed. Reg. 54,085, 54,086 (Dep't Commerce Oct. 17, 1997) .........................13

Trade and International Economic Policy Reform Act of 1987,
    H.R. Rep. No. 100-40, Pt. 1 (1987) ......................................................... *passim*

Ct. No. 24-00082

## I.     <u>INTRODUCTION</u>

On behalf of the Catfish Farmers of America and individual U.S. catfish processors America's Catch, Inc., Alabama Catfish, LLC d/b/a Harvest Select Catfish, Inc., Consolidated Catfish Companies, LLC d/b/a Country Select Catfish, Delta Pride Catfish, Inc., Guidry's Catfish, Inc., Heartland Catfish Company, Magnolia Processing, Inc. d/b/a Pride of the Pond, and Simmons Farm Raised Catfish, Inc. (collectively, "CFA"), we respectfully submit this memorandum in support of CFA's motion for judgement on the agency record.

## II.     <u>RULE 56.2 STATEMENT</u>

### A.     <u>The Administrative Determination Under Review</u>

The administration determination under appeal is *Certain Frozen Fish Fillets from the Socialist Republic of Vietnam*, 89 Fed. Reg. 18,595 (Dep't Commerce Mar. 14, 2024) (final results and partial rescission of admin. rev.; 2021-2022), Appx05724-05727, and accompanying Issues and Decision Memorandum, Appx05691-05723.

### B.     <u>Issues Presented for Review</u>

This appeal raises the following issues:

(1)     Whether the U.S. Department of Commerce ("Commerce") erred in refusing to determine the antidumping duty margin for mandatory respondent Can Tho Import Export Seafood Joint Stock Company Ltd ("CASEAMEX") using partial adverse inferences, where the agency reasoned that it had neither clearly explained how CASEAMEX should report packing factors in its initial questionnaire nor issued a supplemental questionnaire clarifying the issue and renewing its request, despite the clarity of the initial instructions and the agency's issuance of a supplemental questionnaire specifically re-requesting the reporting of packing factors with clarifying instructions;

Ct. No. 24-00082

(2)     Whether Commerce erred in refusing to correct a ministerial error in its final margin calculations relating to CASEAMEX's marine insurance, despite Congress's clear instruction that the agency correct ministerial errors present in its final margin calculations; and

(3)     Whether the margin that Commerce determined for separate rate companies that were not individually examined was in error, as it was based on the erroneous margin calculated for CASEAMEX.

### C.     Request for Court Order and Relief Sought

CFA respectfully requests that the Court remand the challenged agency action for further consideration regarding the issues identified in Subsection B above.

### III.    BACKGROUND

This appeal arises from an administrative review of the antidumping duty order on Vietnamese frozen fish fillets for a period of review ("POR") running from August 1, 2021 through July 31, 2022. *See* Appx05395. The review covered 25 exporters, including the Vietnam-wide entity. *Id.* Commerce selected two exporters, CASEAMEX and Vinh Hoan Corporation ("VHC"), as mandatory respondents. *Id.*[1]

### A.     CASEAMEX's Reporting of Packing Factors

Normally, Commerce calculates antidumping duty margins by comparing the prices at which respondent companies sell the goods subject to the relevant order in the United States ("export price") against the above-cost prices that the respondent companies charge for like goods in their home market ("normal value"). *See, e.g.*, 19 U.S.C. § 1677f-1(d); *see also id.* §§ 1677a, 1677b(a), 1677b(b). However, in cases involving non-market economies such as Vietnam,

---

[1]     CFA does not challenge VHC's $0.00/kg margin.

Ct. No. 24-00082

Commerce determines normal value by building up surrogate, market economy values for the respondents' "factors of production" or "FOP," including (1) production inputs, (2) general expenses and profit, and (3) packing costs. *Id.* § 1677b(c)(1).

In the initial set of questionnaires that Commerce issued to CASEAMEX, the agency instructed the company to report its FOP "for all models or product types {sold in the United States during the review period}, *including that portion of the production that was not destined for the United States*." *See, e.g.*, Appx81858, Appx02143 (emphasis added). Nonetheless, when CASEAMEX reported packing-related FOP for the product models sold to the United States, it did so based solely on U.S. shipments of those models. Appx81886, Appx02171. After CFA pointed out that this was inconsistent with the agency's instructions, Commerce issued CASEAMEX a supplemental questionnaire in which it reiterated its original request, removing any doubt that it applied equally to packing factors as it did to other FOP. *See, e.g.*, Appx82316-82317, Appx02375-02376; Appx84462, Appx04360. Specifically, Commerce directed CASEAMEX to report all packing factors associated with each product type sold to the U.S. market, "regardless of whether those packing materials were used for shipments to the United States." Appx84462, Appx04360. CASEAMEX did not follow these instructions, instead continuing to report packing factors based solely on U.S. shipments. *Id.*

In its case brief, CFA argued that CASEAMEX's failure to report packing factors as instructed – as well as other reporting issues – merited use of adverse inferences pursuant to 19 U.S.C. § 1677e. *See* Appx90036-90038, Appx90043-90044, Appx05516-05518, Appx05523-05524. CFA noted that the company had failed to report packing factors based on global sales of the product types sold to the U.S. market during the POR, notwithstanding the agency's initial and supplemental instructions. Appx90043-90044, Appx05523-05524. CFA argued that, even if the

agency did not use "total" adverse inferences to determine CASEAMEX's margin, it should nonetheless apply a "partial" adverse inference to the company's packing factors reporting. Appx90044-90045, Appx05524-05525. Specifically, CFA argued that the agency should apply the company's highest reported packing factors across all product types that CASEAMEX reported selling in the U.S. market during the POR. Appx90045, Appx05525.

Commerce declined to apply adverse inferences in the final results. Appx05707. Commerce agreed with CFA that the initial questionnaire instructed CASEAMEX to report FOP associated with product types sold in the United States on a global basis (*i.e.*, based on all sales of those products during the POR and not just sales to the United States). *Id.* However, Commerce observed that the initial questionnaire also instructed CASEAMEX to "{d}escribe the method used to pack the merchandise under consideration for shipment to the United States," a statement that the agency viewed as creating at least ambiguity regarding whether packing factors should hew to the standard instruction. *Id.*; *see also* Appx81867-81868, Appx02152-02153. Then, despite having issued a supplemental questionnaire in which it specifically instructed CASEAMEX to report packing factors on a global basis, Commerce stated that it had "never instructed CASEAMEX to report the {packing materials on a global basis} in a supplemental questionnaire." Appx05707.

### B.    CFA's Ministerial Error Allegation

Title 19 U.S.C. § 1675(h) requires Commerce to correct "ministerial errors" in its final determinations in administrative reviews. 19 U.S.C. § 1675(h); *see also* 19 C.F.R. § 351.224 (providing procedures by which parties may allege that ministerial errors exist). "Ministerial errors" are mathematical, clerical, or similar unintentional mistakes, rather than aspects of the calculations that result from affirmative methodological decisions that the agency makes. 19 U.S.C. § 1675(h).

Ct. No. 24-00082

After Commerce disclosed the calculations underlying CASEAMEX's final margin of $0.18/kg, CFA filed comments alleging a ministerial error in the margin program. Appx90565-90570, Appx05745-05748. Specifically, CFA identified a conversion error affecting the agency's incorporation of the surrogate value for marine insurance into the margin program. *See generally id*. Commerce rejected the allegation, finding that the error had been present in its preliminary margin calculations and thus should have been raised in CFA's case brief. *See* Appx05758.

### C.    <u>Commerce's Determination of the Separate Rate</u>

Consistent with 19 U.S.C. § 1675d(c)(5)(A) and its practice, the agency applied CASEAMEX's margin (the only margin that was neither zero/*de minimis* nor based entirely on adverse inferences) to respondent companies that were not selected for individual examination but nonetheless qualified for a separate rate. Appx05724-05725; *see also* Appx05404.

## IV.    <u>STANDARD OF REVIEW</u>

This Court will "hold unlawful any determination, finding, or conclusion found . . . to be unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1). The agency fails to act consistently with this standard where it "offer{s} an explanation for its decision that runs counter to the evidence" or fails to articulate a "rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). Agency determinations must also comport with Congress's statutory directives. Even where the language of a statute is arguably ambiguous, it is the province of the courts to determine the "best" interpretation of the statute and to require that it be applied. *See Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2224, 2265-66 (2024).

Ct. No. 24-00082

## V.  <u>SUMMARY OF ARGUMENT</u>

This Court should remand Commerce's treatment of CASEAMEX's packing factors reporting for further consideration. Commerce's basis for declining to apply at least partial adverse inferences rests on a factual error. Specifically, in explaining its reasons for refusing to apply a partial adverse inference, Commerce noted that it had not issued CASEAMEX a supplemental questionnaire clarifying or reiterating its original request that packing factors be reported, like other FOP, on a global basis. But Commerce did, in fact, issue a supplemental questionnaire with exactly this clarification and direction, as described in CFA's case brief. Commerce's explanation for its decision regarding packing factors runs counter to the evidence and thus should be remanded for further consideration.

This Court should also remand Commerce's treatment of CFA's ministerial error allegation. Commerce's rejection of CFA's ministerial error allegation as untimely is based on a regulation that is inconsistent with the terms of 19 U.S.C. § 1675(h). Prior case law also supports remand here, as there are other issues affecting Commerce's final results that require remand – namely, the agency's treatment of packing factors.

Finally, because Commerce based the margin for separate rate companies that were not selected as mandatory respondents entirely on the margin calculated for CASEAMEX, Commerce should remand the separate rate companies' margin so that Commerce can apply any changes in CASEAMEX's margin to the separate rate respondents.

## VI.  <u>ARGUMENT</u>

For the reasons detailed below, this Court should remand for further consideration (1) Commerce's treatment of CASEAMEX's packing factors reporting, (2) rejection of CFA's ministerial error allegation, and (3) determination of the separate rate.

Ct. No. 24-00082

A.    **Commerce Did Not Adequately Explain or Support its Treatment of CASEAMEX's Packing Factors Reporting**

In antidumping duty cases involving non-market economies like Vietnam, Commerce collects data on FOP, including packing materials. 19 U.S.C. § 1677b(c)(1). Specifically, the agency collects information on the nature and quantities of the materials used to produce and ship one unit of each type of subject merchandise sold to the U.S. market during the review period. *Id.* In this review, Commerce's initial questionnaire to CASEAMEX instructed, as is typical, that this information should be reported based on global shipments of each product model sold to the United States. Appx81858, Appx02143. In other words, the reporting should reflect the materials used to produce and ship all sales during the POR of the product models sold to the U.S. market, including sales of those models to the home and any third-country markets. *Id.*[2]

CASEAMEX, however, reported its packing materials and their usage rates based solely on shipments to the United States. Appx81886, Appx02171. After CFA pointed this out, Commerce issued CASEAMEX a supplemental questionnaire reiterating its original request for global FOP reporting. *See, e.g.*, Appx82316-82317, Appx02375-02376; Appx84462, Appx04360. Commerce specifically directed CASEAMEX to amend its reported packing materials and usage rates to reflect all POR sales of the product models that were sold to the U.S. market, "regardless of whether those packing materials were used for shipments to the United States." Appx84462,

---

[2]    Commerce requests all-inclusive reporting to avoid potential manipulation of the dumping margin. For example, if a respondent made goods destined for the U.S. market in hyper-efficient Facility A, while making commercially interchangeable goods for the home and third-country markets in less-efficient Facility B, the usage rates for materials used solely in producing the goods in Facility A would not provide a complete picture of the company's costs associated with producing that model of merchandise. For further context and explanation, *see* Import Administration Policy Bulletin 10.3, re: *Factor of Production reporting Requirements for Non-Market Economy Companies with Multiple Facilities and/or Production Processes/Lines*, available at https://access.trade.gov/Resources/policy/PB-10.3.pdf.

Ct. No. 24-00082

Appx04360. But CASEAMEX declined to report the packing materials as directed in the supplemental questionnaire, instead continuing to report them based solely on U.S. shipments. *Id.*

Title 19 U.S.C. § 1677e(a) directs Commerce to make its determinations "us{ing} the facts otherwise available" where necessary information is not available on the record and/or has been withheld after being requested from a party. 19 U.S.C. § 1677e(a). Where a party has "failed to cooperate by not acting to the best of its ability to comply with a request for information," the statute further authorizes the agency to use an inference adverse to that party's interests in determining the party's antidumping duty margin. *Id.* § 1677e(b).

In its case brief, CFA argued that CASEAMEX's reporting was deficient overall, such that the company's margin should be determined entirely based on adverse inferences. Appx90036-90044, Appx05516-05524. In the alternative, CFA argued that adverse inferences should be applied to discrete aspects of the company's reporting, including its reporting of packing factors. Appx90044-90045, Appx05524-05525. In its final results, Commerce declined to apply adverse inferences either in total or with respect to any discrete aspect of CASEAMEX's reporting. Appx05707. In explaining its decision not to apply an adverse inference as to packing factors, Commerce noted that, in addition to instructing that FOP be reported globally, its initial questionnaire included a request that CASEAMEX describe the method used to pack goods for shipment to the United States. *Id.* Commerce found that this instruction rendered at least ambiguous the questionnaire's general instruction that all FOP should be reported on a global basis. *Id.* The agency then explained that it never issued CASEAMEX a supplemental questionnaire directing the company to revise its reporting of packing factors. *Id.* Given the allegedly ambiguous nature of its initial instruction and its supposed failure to issue any clarifying supplemental questionnaire, the agency concluded that CASEAMEX's non-global reporting was "acceptable."

Ct. No. 24-00082

*Id.* As such, the agency reasoned that "application of facts available is not warranted," much less an adverse inference. *Id.*

Commerce's determination should be remanded for further consideration. The agency's basis for declining to apply an adverse inference is inconsistent with the record, and otherwise fails to articulate a rational connection between the agency's choice and the record facts. Commerce reasoned that it never issued CASEAMEX a supplemental questionnaire reiterating its original instruction that FOP should be reported on a global basis and/or clarifying that this instruction applied equally to packing factors. *Id.* But the agency did issue such a supplemental questionnaire, in which it expressly instructed CASEAMEX to revise its packing factors reporting to reflect global shipments. Appx84462, Appx04360. The agency's explanation for its decision thus runs counter to the record.

Further, to the extent that Commerce reasoned that CASEAMEX's reporting methodology was "acceptable" due to the lack of clarity in its original instructions, that reasoning is inadequately explained. The agency's initial questionnaire to CASEAMEX stated at the outset that:

> Unless otherwise instructed by the Department, you should report factors information for all models or product types in the U.S. market sales listing submitted by you (or the exporter) in response to Section C of the questionnaire, including that portion of the production that was not destined for the United States.

Appx81858, Appx02143. Similarly, in instructing CASEAMEX how to format the data file in which it would report FOP, the agency stated that:

> The factors file should contain information relating to all of the merchandise produced in each facility that is of the same model or product type as the merchandise sold to the United States, including the portion of production of those models or product types not destined for the United States.

Appx81869, Appx02154. CASEAMEX acknowledged this instruction. *Id.* Nonetheless, in finding acceptable CASEAMEX's non-global reporting of packing factors, Commerce reasoned that, later

Ct. No. 24-00082

in the questionnaire, it instructed CASEAMEX to "{d}escribe the method used to pack the merchandise under consideration for shipment to the United States." Appx81885, Appx02170; Appx05707. But it is not obvious why Commerce has concluded that this separate instruction rendered inoperative, or at least unclear, the agency's earlier, repeated instruction that the factors themselves be reported on a global basis – particularly where CASEAMEX acknowledged the earlier instruction. And to the degree that Commerce concluded that the non-global reporting was acceptable because Commerce failed to request that the reporting be amended, that conclusion ignores Commerce's supplemental questionnaire requesting precisely that.

In sum, Commerce's explanation for declining to apply an adverse inference with respect to CASEAMEX's packing factors is inconsistent with the standard of review. The explanation runs counter to the record, particularly the agency's explanation that it had not issued a supplemental questionnaire to pursue global reporting of the factors. The agency has also failed to adequately explain the basis for deeming "acceptable" reporting that did not hew to its original or supplemental instructions that was not in keeping with its longstanding practice of collecting factors data on a global basis. CFA respectfully submits that the agency's decision not to apply adverse inferences with respect to CASEAMEX's packing factors reporting should therefore be remanded for further consideration.

### B.     <u>Commerce's Treatment of CFA's Ministerial Error Allegation Was Unlawful</u>

Commerce's purpose in administering antidumping duty orders is "to determine dumping margins 'as accurately as possible.'" *NTN Bearing Corp. v. United States*, 74 F.3d 1204, 1208 (Fed. Cir. 1995), quoting *Rhone Poulenc, Inc. v. United States*, 899 F.2d. 1185, 1191 (Fed. Cir. 1990). Allowing "mindless and mechanistic mistakes" to result in inaccurate margins runs contrary to this purpose. *See SGL Carbon v. United States*, 819 F. Supp. 2d 1352, 1363 (Ct Int'l Trade 2012),

Ct. No. 24-00082

quoting *Shinhan Diamond Indus. Co. v United States*, 34 CIT 227, 231 (2010). Nonetheless, Commerce at one time took the position that it lacked authority to amend its final calculations to correct clerical, mathematical, or similar "mindless and mechanistic" mistakes absent a judicial order. As the House Ways and Means Committee explained:

> It has come to the Committee's attention that certain final determinations contain clerical and other errors which are not corrected, under current procedures, unless the parties to the proceedings resort to judicial review of the final determination. The result is expensive litigation that unnecessarily burdens the court system, in order to correct essentially unintended errors.

Trade and International Economic Policy Reform Act of 1987, H.R. Rep. No. 100-40, Pt. 1, at 144 (1987) ("Rep. 100-40")"). To avoid such needless litigation, Congress amended the Tariff Act of 1930 to require Commerce to establish procedures for "the correction of ministerial errors in final determinations within a limited time period after their issuance." *Id.*; *see also* 19 U.S.C. § 1675(h).

Despite this clear directive, Commerce created a regulation – for no principled reason, and contrary to its clear overarching goal of calculating dumping margins accurately – that states that where a correctable, inadvertent calculation error that is present in its final calculations was also present in its preliminary calculations, the agency cannot and will not correct the error unless it was raised in a party's case brief. 19 C.F.R. § 351.224(c)(1); *see also id.* § 351.309(c)(2). This regulation is not consistent with the text of the authorizing statute, or the will of Congress in enacting it. Title 19 U.S.C. § 1675(h) reads:

> **Correction of ministerial errors**
>
> The administering authority shall establish procedures for the correction of ministerial errors in final determinations within a reasonable time after the determinations are issued under this section. Such procedures shall ensure opportunity for interested parties to present their views regarding any such errors. As used in this subsection, the term "ministerial error" includes errors in addition, subtraction, or other arithmetic function, clerical errors resulting from inaccurate copying, duplication, or the like, and any other type of unintentional error which the administering authority considers ministerial.

*Id.* § 1675(h).

By using the word "shall," the statute places Commerce under an affirmative obligation to correct ministerial errors "in final determinations." The statute also states that the agency's procedures must allow for the corrections to take place "within a reasonable time after {final} determinations are issued." The statute's text does not express any intent to exclude from its ambit ministerial errors that, while present "in final determinations," may also have been present in relevant preliminary determinations. *Id.* Nor does the legislative history reflect such an intent. Rep. 100-40 at 144. Rather, the legislative history repeatedly refers to errors in final determinations without discussion of whether the same errors were present in preliminary determinations. *Id.*

CFA recognizes that the courts have previously found that, consistent with Commerce's regulations, that agency is not required to address ministerial error comments filed in response to its final calculations where the alleged errors were also present in the preliminary calculations but were not raised in the commenting party's case brief. *See, e.g.*, *Dorbest Ltd. v. United States*, 604 F.3d 1363, 1375 (Fed. Cir. 2010); *QVD Food Co., Ltd. v. United States*, 658 F.3d 1318, 1328 (Fed. Cir. 2011). However, these decisions assumed that Commerce's regulations were lawful. *See generally Dorbest*; *QVD Food Co.* At least, the decisions contain no discussion of the regulations' conformity with 19 U.S.C. § 1675(h)'s language or purpose. *See id.* But in the time since they were decided – and indeed, in the time since Commerce issued the determination under appeal – the Supreme Court issued its decision in *Loper Bright Enters. v. Raimondo*.[3] This decision clarifies that, even if their authorizing statute could be perceived as ambiguous, agency regulations must

---

[3]    The Supreme Court's decision was issued June 28, 2024; the challenged determination was published in the *Federal Register* on March 14, 2024.

hew to the statute's "best" interpretation, *i.e.,* the interpretation that most closely "effectuate{s}

the will of Congress." *Loper Bright*, 144 S. Ct. 2244, 2251, 2263 (2024).

By its plain terms, the statute is concerned with the correction of non-substantive errors "in

final determinations." 19 U.S.C. § 1675(h). And as noted above, neither the statute's text nor its

legislative history express any intent to exclude from the statutory directive ministerial errors that,

while present "in final determinations," may also have been present in relevant preliminary

determinations. *Id.*; Rep. 100-40 at 144. CFA thus respectfully submits that the best interpretation

of the statute reflects the fact that Congress desired Commerce to fix ministerial errors present in

its final calculations, and did not see fit to make exceptions to that direction for errors that were

also present in the preliminary calculations.

In the review on appeal, after Commerce disclosed the calculations underlying its final

results to the parties, CFA filed comments alleging a conversion error in the margin program that

affected the incorporation of the surrogate value for marine insurance. *See generally* Appx90565-

90570, Appx05745-05748. Commerce has previously recognized that mistaken conversion of

values from one unit of measurement to another (or mistaken failure to perform such conversions)

constitutes a ministerial error. *See, e.g.*, *Fine Furniture (Shanghai), Ltd. v. United States*, 182

F. Supp. 3d 1350, 1355 n.3 (noting Commerce's correction of mistakes in conversion as ministerial

errors); *see also Ferrosilicon from Brazil*, 62 Fed. Reg. 54,085, 54,086 (Dep't Commerce Oct. 17,

1997) (amended final results of antidumping duty admin. rev.) (treating inadvertent conversion of

U.S.-dollar denominated values as a ministerial error).

Nonetheless, in a brief letter, Commerce rejected CFA's allegation on the basis that the

error had been present in its preliminary margin calculations and thus should have been raised in

CFA's case brief, per the agency's regulations and the Federal Circuit's decisions in *Dorbest*, *QVD*

Ct. No. 24-00082

*Foods*, and a 2013 decision of this Court that relied on those decisions. *See* Appx05758. But the agency's determination – and its regulation requiring ministerial errors present in preliminary calculations to be raised in case briefs – is inconsistent with "the best reading" of 19 U.S.C. § 1675(h). *See Loper Bright*, 144 S.Ct. at 2251. Again, the "best" interpretation of the statute reflects the fact that Congress did not see fit to make exceptions to its direction and intent that Commerce correct inadvertent errors that are present in its final calculations.

Further, while it makes sense for Commerce to require any arguments about methodological choices reflected in the preliminary calculations to be presented in a party's case brief, this is because such arguments require the agency to address substantive claims potentially involving complex issues. Ministerial errors by statutory definition do not relate to methodological choices, but to "unintended" "inadvertencies" such as clerical or purely arithmetical mistakes. Rep. 100-40 at 144; *NTN Bearing*, 74 F.3d at 1208; 19 U.S.C. § 1675(h). The agency need exercise no substantive judgment in correcting such errors beyond confirming that they exist. Thus, not only did Congress fail to make any exceptions to its directive and intent that Commerce correct ministerial errors in its final calculations, the nature of such errors as Congress defined them is unsupportive of the exception Commerce's regulations make.

CFA notes that, in previously holding that Commerce may refuse to entertain ministerial error allegations as to mistakes in the final calculations that were also present in the preliminary results, the courts have drawn upon the policy considerations animating the exhaustion doctrine. *See Dorbest*, 604 F.3d at 1375. But the purpose of that doctrine is to give the agency the ability to consider issues in the first instance before it is haled into court. *See, e.g.*, *Jacobi Carbons AB v. United States*, 222 F. Supp. 3d 1159, 1170 (Ct Int'l Trade 2017). Such concerns do not arise in the context of this appeal because, in filing its ministerial error allegation, CFA did raise the relevant

issue to the agency. And to the extent that exhaustion serves the goal of protecting agency administrative authority, *McCarthy v. Madigan*, 503 U.S. 140, 145 (1992), the exhaustion doctrine cannot protect authority that the agency does not have. As for the doctrine's role in forestalling needless judicial review, Congress adopted 19 U.S.C. § 1675(h) to advance that specific purpose; it is only by failing to conform its regulations and actions to that statute's language and Congress's intent that CFA has been forced to raise this issue here. 19 U.S.C. § 1675(h); Rep. 100-40 at 144.

Because the correction of a ministerial error does not relate to Commerce's substantive judgments or methodological choices, the burden to the agency of considering such allegations is both minimal and one that the statute directly and clearly requires the agency to undertake. Too, because both 19 U.S.C. § 1675(h) and the agency's regulations provide parties with the right to reply to ministerial error allegations, no party is prejudiced by the agency's consideration of allegations concerning ministerial errors present in the final calculations that were also present in the preliminary calculations. 19 U.S.C. § 1675(h); 19 C.F.R. § 351.224(c)(3). Finally, CFA notes the Federal Circuit's observation in *NTN Bearing* that, where a case must be remanded for other reasons, remanding for the agency to address and correct clerical errors makes especial sense. *NTN Bearing*, 74 F.3d at 1208.

Here, Commerce's decision not to consider CFA's ministerial error allegation on grounds of untimeliness ran afoul of the agency's mandate under 19 U.S.C. § 1675(h), as neither the agency's decision nor the regulation underlying it comport with the best reading of the statute. CFA thus respectfully requests that the Court remand Commerce's treatment of CFA's ministerial error allegation for consideration consistent with Congress's directive.

Ct. No. 24-00082

### C.    The Determination of the Separate Rate Should Also Be Remanded

Consistent with 19 U.S.C. § 1675d(c)(5)(A) and its practice, the agency applied CASEAMEX's margin (the only margin that was neither zero/*de minimis* nor based entirely on adverse inferences) to respondent companies that were not selected for individual examination but nonetheless qualified for a separate rate. Appx05724-05725; *see also* Appx05404. Because remand is required on issues implicating the margin determined for CASEAMEX, CFA submits that remand of the separate rate is also in order, so that the separate rate may be adjusted if necessary to reflect changes on remand to CASEAMEX's margin.

## VII.    CONCLUSION

For the reasons detailed above, CFA respectfully requests that the Court remand Commerce's decision not to employ an adverse inference with respect to CASEAMEX's packing factors reporting, the agency's rejection as untimely of CFA's ministerial error allegation, and Commerce's determination of the separate rate.

Respectfully submitted,

/s/ Maureen E. Thorson
Nazak Nikakhtar, Esq.
Maureen E. Thorson, Esq.
Stephanie M. Bell, Esq.

*Counsel to the Catfish Farmers of America and individual U.S. catfish processors America's Catch, Inc., Alabama Catfish, LLC d/b/a Harvest Select Catfish, Inc., Consolidated Catfish Companies, LLC d/b/a Country Select Catfish, Delta Pride Catfish, Inc., Guidry's Catfish, Inc., Heartland Catfish Company, Magnolia Processing, Inc. d/b/a Pride of the Pond, and Simmons Farm Raised Catfish, Inc.*

Dated: October 15, 2024

**Ct. No. 24-00082**

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Scheduling Order (July 19, 2024), ECF No. 23, the undersigned certifies that this brief complies with the word limitation requirement. The word count for Plaintiff's Rule 56.2 Motion for Judgment on the Agency Record, as computed by Wiley Rein LLP's word processing system (Microsoft Word 2019), is 4,614 words.


<u>    /s/ Maureen E. Thorson    </u>
(Signature of Attorney)

<u>    Maureen E. Thorson    </u>
(Name of Attorney)

<u>Catfish Farmers of America, *et al.*</u>
(Representative Of)

<u>October 15, 2024</u>
(Date)