**UNITED STATES COURT OF INTERNATIONAL TRADE**
**BEFORE THE HONORABLE STEPHEN A. VADEN, JUDGE**

| | |
|---|---|
| CATFISH FARMERS OF AMERICA, *et al.*,<br><br>                    Plaintiffs,<br><br>    v.<br><br>UNITED STATES,<br><br>                    Defendant,<br><br>    and<br><br>CAN THO IMPORT EXPORT SEAFOOD JOINT STOCK COMPANY,<br><br>                  Defendant-Intervenor | Court No. 24-00082 |

**DEFENDANT-INTERVENOR'S RESPONSE IN OPPOSITION TO PLAINTIFFS' RULE 56.2 MOTION FOR JUDGMENT ON THE AGENCY RECORD**

                                                                      Robert L. LaFrankie

                                                                      **CROWELL & MORING LLP**
                                                                      1001 Pennsylvania Avenue, N.W.
                                                                      Washington, DC 20004-2595
                                                                       (202) 624-2868
                                                                      Email: rlafrankie@crowell.com

                                                                      *Counsel to Can Tho Import Export*
                                                                      *Seafood Joint Stock Company*

Dated: February 5, 2025

# **TABLE OF CONTENTS**

INTRODUCTION ....................................................................................................1

RULE 56.2 STATEMENT .......................................................................................1

STATEMENT OF THE ISSUES PRESENTED........................................................2

STATEMENT OF THE FACTS ...............................................................................2

SUMMARY OF THE ARGUMENT ........................................................................3

ARGUMENT ............................................................................................................4

      I.      Commerce Properly Refused to Rely on Facts Available with an Adverse Inference for CASEAMEX's Packing Factors ..................4

      II.     Commerce Properly Rejected Plaintiff's Ministerial Error Allegation ..................................................................................................11

CONCLUSION .......................................................................................................15

i

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Parkdale Int'l, Ltd. v. United States*,
   508 F. Supp. 2d 1338 (Ct. Int'l Trade 2007) ...............................................................12

**Statutes**

19 U.S.C. § 1675(h) ..............................................................................................................12

19 U.S.C. § 1677e(a) ......................................................................................................6, 7, 8

19 U.S.C. § 1677e(a) and (b) ..................................................................................................4

19 U.S.C. § 1677e(b) .....................................................................................................5, 6, 8

19 U.S.C. § 1677m ..................................................................................................................7

19 U.S.C. § 1677m(d) .........................................................................................................7, 8

19 U.S.C. § 1677m(e) ..........................................................................................................5, 8

Tariff Act of 1930 Section 776(a) ...........................................................................................7

**Other Authorities**

19 C.F.R. § 351.224(f) ....................................................................................................13, 14

19 C.F.R. § 351.309(c)(2) .....................................................................................................14

19 CFR § 351.224 ...................................................................................................................3

19 CFR § 351.224(c)(1) ..................................................................................................11, 13

DCACTIVE-79060001.1

# **GLOSSARY**

| | |
|---|---|
| AD | Antidumping |
| CFA | Catfish Farmers of America |
| CASEAMEX | Can Tho Import Export Seafood Joint Stock Company |
| Commerce | U.S. Department of Commerce |
| IDM | Issues and Decision Memorandum |
| USG | United States Government |

.

DCACTIVE-79060001.1

**INTRODUCTION**

Defendant-Intervenor Can Tho Import Export Seafood Joint Stock Company ("CASEAMEX") respectfully submits this response to the Rule 56.2 motion for judgment on the agency record filed by Plaintiffs Catfish Farmers of America, *et al*. ("CFA"), ECF No. 27, ("CFA Br.") challenging the *Final Results* of the administrative review of the antidumping ("AD") duty order on certain frozen fish fillets from Vietnam issued by the U.S. Department of Commerce ("Commerce").

Defendant United States Government ("Defendant USG") has thoroughly rebutted CFA's arguments in its January 16, 2025 response to CFA's Rule 56.2 motion and supporting legal brief. *See* Def's Resp. to Pl.'s Mot. J. on the Agency Record (Jan. 16, 2025), ECF No. 29 ("Def. Br."). CASEAMEX fully concurs with Defendant USG's rebuttal arguments and it adopts them by reference. CASEAMEX therefore will not fully brief these issues, but instead limits its comments to a few additional legal and factual points to supplement Defendant USG's response and to provide additional context to assist the Court's understanding of these issues. To avoid repetition, we also provide only a few additional facts for context rather than summarizing all facts.

**RULE 56.2 STATEMENT**

The administrative determination under review is Commerce's *Final Results* issued in the nineteenth administrative review of the AD order on certain frozen fish fillets from Vietnam. *Certain Frozen Fish Fillets from the Socialist Republic of Vietnam: Final Results and Partial Rescission of Administrative Review; 2021-2022*, 89 Fed. Reg. 18,595 (Dep't Commerce March 14, 2024) ("*Final Results*"),

1

Appx05724-05727, and accompanying Issues and Decision Memorandum (March 5, 2024) ("*Final IDM*"), Appx05691-05723.

## STATEMENT OF THE ISSUES PRESENTED

1.      Whether Commerce properly refused to use "facts otherwise available" with an "adverse" inference in determining CASEAMEX's packing factors, where CASEAMEX provided all such information requested and otherwise cooperated fully in this proceeding.

2.      Whether Commerce properly rejected Plaintiffs' ministerial error allegation, where that allegation was untimely and otherwise failed to allege a true "ministerial" error.

## STATEMENT OF THE FACTS

We concur with the facts set forth in Defendant USG's response brief and hereby incorporate them by reference. For purposes of the "facts otherwise available" issues addressed in this response brief, we note one additional set of facts relevant to this issue. Defendant USG correctly notes that Commerce issued an initial supplemental questionnaire to CASEAMEX requesting that it resubmit its packing factors. *See* Def. Br. at 4. Defendant USG further notes that CASEAMEX fully responded to this initial questionnaire addressing all packing factor issues raised by Commerce. *See id.* We note further that Commerce subsequently issued three other supplemental questionnaires after CASEAMEX responded to Commerce's request for revised packing factors. *See* CASEAMEX Third Supp. Q'aire (July 3, 2023) Appx89122-89128, Appx05065-05071; CASEAMEX Fourth Supp.

2

Q'aire (Aug. 1, 2023), Appx89404-89407, Appx05259-05262; CASEAMEX (second) Fourth Supp. Q'aire (Aug. 18,2023), Appx89484-89487, Appx05356-05359. Commerce raised no additional questions about CASEAMEX's packing factors in any of these additional questionnaires, suggesting it was satisfied with CASEAMEX's reporting of its packing factors. *See id*.

## SUMMARY OF THE ARGUMENT

The Court should affirm Commerce's *Final Results*. Commerce properly refused to apply "facts otherwise available" with an "adverse" inference in determining CASEAMEX's packing factors. Commerce determined that CASEAMEX fully cooperated in this proceeding and provided all information requested. Substantial evidence supports Commerce's findings. CFA otherwise failed to demonstrate any legal errors.

Commerce also properly rejected CFA's "ministerial error" allegation, as it was untimely and otherwise failed to qualify as an actual ministerial error under the law. Commerce properly denied that allegation pursuant to its ministerial error regulations, codified at 19 CFR § 351.224. Substantial evidence supports this decision. CFA's related argument that Commerce's ministerial error regulations are contrary to the underlying statute has no merit. Commerce's regulations are specifically contemplated by the statute and reasonably specify the procedures necessary for parties to submit ministerial error allegations. CFA has not otherwise met the high burden it faces in making such a "facial" challenge to Commerce's regulations.

3

# ARGUMENT

## I. Commerce Properly Refused to Rely on Facts Available with an Adverse Inference for CASEAMEX's Packing Factors

CFA argues that Commerce unlawfully refused to apply "facts otherwise available" with "adverse" inferences regarding CASEAMEX's reporting of its packing factors. *See* CFA Br. at 7-10. Specifically, CFA argues that CASEAMEX disregarded Commerce's instructions to report its packing factors on "global sales", choosing instead to report them based on its U.S. sales. *See id.* at 3. CFA claims that CASEAMEX was non-cooperative and that Commerce should therefore have used "facts otherwise available" with "adverse" inferences. *See id.* at 8-9. CFA states that Commerce's reasoning "is inconsistent with the record" and otherwise "fails to articulate a rational connection" to the record. *Id.* at 9. CFA further proffers that Commerce's "reasoning is inadequately explained." *Id.*

CFA's arguments lack merit and should be rejected. As an initial matter, CFA's argument is unclear. CFA argues at the outset that Commerce's decision "rests on a factual error." *Id.* at 6. Yet, later in its brief, CFA argues that Commerce failed to explain its reasoning. *Id.* at 9. Further, while CFA raises various legal issues, it fails to address all the relevant statutory factors regarding application of "facts otherwise available" and "adverse" inferences. *See id.* at 8. In fact, it is CFA who fails to explain its arguments and reasoning.

Despite these shortcomings, Defendant USG effectively rebuts each of CFA's arguments. Defendant USG explains that Commerce followed the law at 19 U.S.C. § 1677e(a) and (b) in declining to apply adverse facts available. *See id.* at 10-16.

4

Specifically, Defendant USG notes that Commerce reasonably determined CASEAMEX reported packing factors in an "acceptable manner", thereby demonstrating it acted to the "best of its ability", as required by 19 U.S.C. § 1677e(b). *See id*. at 10-11. Defendant USG also notes that "Commerce determined that CASEAMEX responded in a manner consistent with its questionnaires." *Id*. at 12. Accordingly, Commerce had no basis to rely on facts available. *See id*.

Defendant further explains that Commerce's actions were consistent with the separate statutory provisions at 19 U.S.C. § 1677m(e), which "tempers" Commerce's ability to reject submitted information and apply facts available. *See id*. at 17.[1] This is particularly true where, as here, the information submitted is, *inter alia*, "sufficiently complete to be reliable." *Id*. Defendant USG notes that Commerce found CASEAMEX's reporting of its packing factors "acceptable" for this purpose. *Id*. at 19. Thus, contrary to CFA's claims, Commerce's actions were reasonable and otherwise in accordance with law.

Defendant USG also rebutted CFA's claims that Commerce committed a "factual" error, or that its decision is otherwise inconsistent with the record. *See id*. at 11-15. Defendant USG explained that CASEAMEX complied fully with a specific questionnaire instruction to report packing material factors only for "merchandise under consideration for shipment *to the United States*." *Id*. at 11 (emphasis in original). This specific instruction qualified a more general instruction to report factors for all production, "including that portion of the production not destined for

---

[1] As discussed later in this brief, CFA fails to mention this provision.

5

the United States." *Id.* Thus, contrary to CFA's claims, Commerce did not require that CASEAMEX report "global" packing factors.

Defendant USG further noted "Commerce explained that CASEAMEX otherwise provided an explanation of why its reporting was consistent with Commerce's reporting requirements" and Commerce did not issue another supplemental questionnaire on this issue after seeing CASEAMEX's response. *See id.* at 12. Commerce noted this in its *Final Results*. *See Final IDM* at 17, Appx05707.

CASEAMEX agrees with Defendant USG's arguments.[2] In order to avoid redundancy, we will not address all of these same arguments in full in this brief. Rather, for efficiency, we adopt Defendant USG's arguments by reference and we provide a few additional points to assist the Court's understanding of the issues. We first address a few legal issues regarding "facts available." We next address a few factual points.

First, with regard to the legal analysis relevant to "facts available", CFA fails to adequately discuss or explain all of the relevant legal provisions. CFA spends precious little time addressing applicable statutory prongs. Indeed, CFA offers one paragraph referencing (but not explaining) 19 U.S.C. § 1677e(a) (use of "facts otherwise available") and 19 U.S.C. § 1677e(b) (use of "adverse inferences"). *See* CFA Br. at 8. CFA not only fails to address all detailed nuances of these provisions,

---

[2] We have summarized some of Defendant USG's main arguments above as necessary to help give context to the supplemental arguments provided in this brief.

6

but it also ignores the separate statutory provisions at 19 U.S.C. § 1677m addressing Commerce's use of "deficient submissions." We highlight below some of the legal analysis omitted by CFA, including the interplay of various statutory provisions.

In this regard, Section 776(a) of the Tariff Act of 1930, as amended (the "Act"), permits Commerce to use "facts otherwise available" in reaching determinations if necessary information is not available on the record, or if an interested party: (A) withholds information requested by the Department, (B) fails to meet submission deadlines or provide information in the form or manner requested, (C) significantly impedes a proceeding, or (D) provides unverifiable information. *See* 19 U.S.C. § 1677e(a).

Before using facts available, Commerce must also comply with the notice and remedial requirements of 19 U.S.C. § 1677m(d). Specifically, if Commerce determines that a response to request for information does not comply with the request, Commerce "shall *promptly* inform the person submitting the response of the nature of the Deficiency and shall, to the extent practicable, provide that person with an opportunity to remedy or explain the deficiency." 19 U.S.C. § 1677m(d) (emphasis added).

Importantly, the statute also instructs that the Department "shall not decline to consider information that is submitted by an interested party and is necessary to the determination" if:

7

(a) the information is submitted by the deadline established for its submission,

(b) the information can be verified,

(c) "the information is not so incomplete that it cannot serve as a reliable basis for reaching the applicable determination",
and meeting the requirements established by the{Department} with respect to the information,"

and

(e) the information can be used without undue difficulties.

19 U.S.C. § 1677m(e).

Thus, under these provisions, Commerce may only use "facts otherwise available" if it first: (1) clearly established the need for using facts otherwise available (based on 19 U.S.C. § 1677e(a)); (2) met the notice and remedial requirements of 19 U.S.C. § 1677m(d); and (3) met the five enumerated requirements of 19 U.S.C. § 1677m(e) to enable it to decline an interested party's information for its final determination. Moreover, even when these requirements are met, Commerce may then only use an "adverse" inference (as CFA sought here) under 19 U.S.C. § 1677e(b) if it also separately "finds that an interested party has failed to cooperate by not acting to the best of its ability to comply with a request for information." 19 U.S.C. § 1677e(b).

CFA has failed to address many of these factors, or to cite caselaw supporting its position. Regardless, as cogently shown in Defendant USG's brief (with textual analysis and case cites), Commerce's actions in declining to use facts available and adverse inferences were supported by substantial evidence and otherwise lawful.

8

Second, and apart from its failure to analyze the law, CFA also mischaracterizes important record facts. This is particularly true with regard to Commerce's issuance of supplemental questionnaires, and CASEMEX's responses to them. Defendant USG addresses many of these factual inaccuracies in its brief (as discussed above), but we note a few more factual nuances for the record. In particular, CFA baldly asserts that CASEAMEX "declined to report the packing materials as directed in the supplemental questionnaire." CFA Br. at 8.

This simple statement does not tell the whole story. Indeed, CFA omits critical details. CASEAMEX did not simply refuse to provide global packing costs as CFA appears to suggest. Rather, CASEAMEX actually provided a fulsome narrative in its May 16, 2023 questionnaire response explaining why it continued to report packing factors based on U.S. sales rather than global sales. CASEAMEX explained that the Department's initial instructions requested packing used "to pack a unit of *the merchandise under consideration for export to the United States*." *See* CASEAMEX Supp. Questionnaire Response (May 16, 2023) ("CSX Supp. Q.") at 29 (emphasis in original), Appx84462, Appx04360. CASEMEX thus informed Commerce that in light of the earlier instruction, it continued to report packing information "based on the packing types for the MUC sold to the U.S. market", consistent with the original questionnaire. *Id*. CASEAMEX also revised its packing information in response to some of the Department's other follow-up questions. *See id.*

9

In sum, CASEAMEX thoughtfully responded to Commerce's questionnaire by pointing out the discrepancy between the original instructions and the supplemental instructions. CASEAMEX also revised its packing information in response to the questionnaire. CASEAMEX thus cooperated fully and explained its methodology and its understanding of Commerce's request for packing information.

Importantly, Commerce did not seek additional packing information from CASEAMEX after receiving the above response on May 16, 2023. *See* Def. Br. at 12. Indeed, Commerce issued three additional supplemental questionnaires to CASEAMEX after this time, including one on July 3, 2023, one on August 1, 2023, and one on August 18, 2023. *See* CASEAMEX Third Supp. Q'aire (July 3, 2023) Appx89122-89128, Appx05065-05071; CASEAMEX Fourth Supp. Q'aire (Aug. 1, 2023), Appx89404-89407, Appx05259-05262; CASEAMEX (second) Fourth Supp. Q'aire (Aug. 18,2023), Appx89484-89487, Appx05356-05359. *See also* Def. Br. at 12. Yet none of these additional questionnaires sought additional packing information, or otherwise suggested CASEMEX had improperly reported its packing factors. *See id*. This confirms Commerce had no issues with CASEAMEX'S reporting of its packing factors.

Thus, for these reasons, and for the reasons explained in Defendant USG's response brief, Commerce properly relied upon CASEAMEX's submitted packing factors, and it properly refused to apply "facts otherwise available" or "adverse" inferences. CASEAMEX properly reported its packing factors and it otherwise transparently and fully cooperated in these proceedings.

10

## II. Commerce Properly Rejected Plaintiff's Ministerial Error Allegation

In the underlying proceeding, Commerce rejected CFA's claim of a "ministerial error", which it submitted on March 25, 2024, after the *Final Results*. *See* Letter from Commerce to CFA *Re: Rejection of Untimely Ministerial Error Allegation* (Apr. 2, 2024) *("Commerce Rejection Letter")*, Appx05758. Commerce determined that CFA's ministerial error allegation was "untimely," and it therefore rejected the claim outright. *See id*. Commerce noted that "the alleged ministerial error referenced in {CFA's} submission was discoverable earlier in the proceeding" (*i.e.*, immediately following the *Preliminary Results* issued). *Id*. Thus, Commerce determined that any such ministerial error allegation should have been included in CFA's "case brief", which was filed on January 3, 2024, nearly three full months earlier. *See id*.[3]

In rejecting CFA's ministerial error allegation, Commerce explained that its regulations codified at 19 CFR § 351.224(c)(1) specify that claims of ministerial errors regarding the *Preliminary Results* "should be included in a party's case brief." *Id*. CFA failed to include the ministerial error allegation in its case brief (as required by regulation), and Commerce therefore properly rejected its submission as untimely. *Id*.

Having failed to file its ministerial error allegation in a timely manner, CFA now argues for the first time (to this Court) that Commerce's ministerial error

---

[3] CFA submitted its case brief to Commerce on January 3, 2024. *See* CFA Case Brief (Jan 3, 2024) Appx89985-90049, Appx05465-05529.

11

regulations themselves are contrary to the underlying ministerial error statute, codified at 19 U.S.C. § 1675(h). *See* CFA Br. at 10-13 *citing* 19 U.S.C. § 1675(h). CFA argues that this statute, which authorizes Commerce to "establish procedures for the correction of ministerial errors in final determinations within a reasonable time …", somehow forbids Commerce from imposing reasonable regulatory deadlines governing when those allegations must be made. *See id.*

CFA's new statutory argument wholly lacks merit and should be rejected. Defendant USG has fully and completely rebutted each of CFA's statutory arguments. *See USG Br.* at 20-35. Defendant USG explains that CFA faces a very high burden in making such an overt "facial" challenge to Commerce's regulations. *See id.* at 20-21. Defendant USG points out that CFA must establish "that no set of circumstances exists under which the {regulation} would be valid. *Id.* at 20, *citing Parkdale Int'l, Ltd. v. United States*, 508 F. Supp. 2d 1338 (Ct. Int'l Trade 2007). CFA has clearly not met this very high burden. *See id.*

Defendant USG also explains that CFA otherwise misinterpreted 19 U.S.C. § 1675 (h). *Id.* at 21-27. That statute specifically authorizes Commerce's actions to establish "procedures" for addressing ministerial errors, which Commerce did by promulgating its ministerial error regulations. *See Id.* at 22 (noting that "the statute directs Commerce to create a process for parties to submit arguments about whether errors are indeed 'ministerial' within the meaning of 19 U.S.C. § 1675 (h))." This is precisely what Commerce did in promulgating its regulations, which specify that ministerial errors committed in the *Preliminary Results* must be addressed in a

12

party's case brief. *See* 19 CFR § 351.224(c)(1). CFA failed to do so and thus was precluded from raising this claim later.

In addition, CASEAMEX notes for the record that at least one party argued to Commerce that CFA's ministerial error allegation was not even a true "ministerial error" as that term is defined in the law. *See* Hung Vuong Group Rebuttal to CFA Ministerial Error Allegation (April 1, 2024) ("*HVG Rebuttal*"), Appx90571-90576, Appx0572-05757. In this regard, it is well established that a ministerial error is defined to mean an "unintentional" error, such as "an error in addition, subtraction, or other arithmetic function", and similar types of "clerical" errors. *See* 19 C.F.R. § 351.224(f).

CFA's allegation fails to meet this definition. CFA alleged that Commerce "unintentionally neglected to calculate marine insurance on a 'percentage basis' instead of some other basis." *See HVG Rebuttal* at 2-3, Appx90572-90573; Appx05753-05754. But, CFA's assertion is factually incorrect. The record reflects that Commerce <u>*intended*</u> to calculate marine insurance as a "per-unit amount" in dollars per kilogram and "not as a percentage of the sales price." *Id*. Thus, because Commerce intended its calculation, Commerce did not commit a "ministerial error" within the meaning of the law. 19 C.F.R. § 351.224(f). Rather, Commerce made an intentional methodological choice in calculating CASEMEX's marine insurance.

CFA thus tried to challenge Commerce's *methodology* (through the guise of a purported "ministerial error"). Thus, even if CFA had timely submitted its ministerial allegation (which it failed to do), Commerce still would have rejected

13

CFA's claim because Commerce's s actions did not constitute a ministerial error as defined by law.  *See* 19 C.F.R. § 351.224(f).

We highlight one additional point.  CFA clearly slept on its rights before Commerce.  Indeed, CFA neglected to timely raise its methodological challenge to Commerce's marine insurance calculations.  CFA then repackaged its argument as a "ministerial error" in order to make the argument again, using the later ministerial error deadline set by Commerce's regulations. Commerce recognized CFA's baseless efforts and rejected them. *See Commerce Rejection Letter*, Appx05758.

Having failed to succeed with its untimely challenge to Commerce, CFA now invents yet another new theory (*i.e.,* facial challenge to Commerce's regulations) which it presents to this Court in the first instance on appeal.  This is clearly a desperate last-ditch effort by CFA to disturb Commerce's findings on marine insurance through whatever means available.[4]  The Court should reject CFA's thinly-veiled effort to overcome the fact that it missed its filing deadline.

Thus, for these reasons, the Court should sustain Commerce's rejection of CFA's ministerial error.  CFA submitted its purported allegation nearly three

---

[4] Indeed, it appears that CFA has also failed to exhaust its administrative remedies in putting forth its new facial challenge to Commerce's regulations now before this Court. CFA never raised this issue before Commerce, in its case brief or otherwise. Rather, CFA raises it now before this Court for the first time.  CFA was aware (or should have been aware) at the time of the *Preliminary Results* that it could allege a ministerial error should it choose to do so. Had CFA timely made its ministerial error allegation in its case brief, it could have also facially challenged Commerce's regulations at that time.  As Commerce noted in its memo rejecting CFA's ministerial error allegation, any arguments that continued to be relevant to CFA should have been raised in its case brief.  *See Commerce Rejection Letter,* Appx05758.  *See also* 19 C.F.R. § 351.309(c)(2).  CFA failed to raise this new "facial" challenge in its case brief to Commerce and it should be precluded from doing so again now.

14

months late.  Commerce reasonably rejected this submission, as it was untimely (and otherwise did not even amount to a "ministerial error"). Nor are Commerce's regulations contrary to the statute.  In fact, the statute actually contemplates that Commerce promulgate regulations to implement the statute, which is what Commerce did.

## CONCLUSION

For these reasons, we respectfully request that the Court hold that Commerce's decision was supported by substantial evidence and otherwise in accordance with law, and it should sustain Commerce's *Final Results* regarding CASEAMEX.

    Respectfully submitted

    /s/ Robert L. LaFrankie
    Robert L. LaFrankie

    CROWELL & MORING LLP
    1001 Pennsylvania Avenue, N.W.
    Washington, DC  20004

    *Counsel to Can Tho Import Export Joint Stock Company.*

February 5, 2025

## **CERTIFICATE OF COMPLIANCE**

I hereby certify, pursuant to section 2(B)(1) of the Standard Chambers Procedures of this Court, that this brief contains 3,621 words, excluding the table of contents, table of authorities, any addendum containing statutes, rules or regulations, any certificates of counsel, and counsel's signature, as calculated by the word processing system used to prepare this brief (Microsoft Word), and therefore complies with the maximum word count limitation applicable to this brief.

/*s*/ Robert L. LaFrankie
Robert L. LaFrankie

1

DCACTIVE-79060001.1