Slip Op. 25-152

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **CATFISH FARMERS OF AMERICA, et al.,** | |
| Plaintiffs, | |
| v. | **Before: Timothy C. Stanceu, Judge** |
| **UNITED STATES,** | **Court No. 24-00082** |
| Defendant, | |
| and | |
| **CAN THO IMPORT EXPORT SEAFOOD JOINT STOCK COMPANY,** | |
| Defendant-Intervenor. | |

## OPINION AND ORDER

[Remanding an agency decision concluding a review of an antidumping duty order on certain frozen fish fillets from the Socialist Republic of Vietnam]

Dated: December 15, 2025

*Maureen E. Thorson*, Wiley Rein LLP, of Washington, D.C., for plaintiffs Catfish Farmers of America, America's Catch, Inc., Alabama Catfish, LLC d/b/a Harvest Select Catfish, Inc., Consolidated Catfish Companies, LLC d/b/a Country Select Catfish, Delta Pride Catfish, Inc., Guidry's Catfish, Inc., Heartland Catfish Company, Magnolia Processing, Inc. d/b/a Pride of the Pond, and Simmons Farm Raised Catfish, Inc. With her on the briefs were *Nazak Nikakhtar* and *Stephanie M. Bell*.

*Collin T. Mathias*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., for defendant. With him on the brief were *Brett A. Shumate*, Assistant Attorney General, *Patricia M. McCarthy*, Director, and *Reginald T. Blades, Jr.*, Assistant Director. Of counsel on the brief was *K. Garrett Kays*,

Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce.

*Robert L. LaFrankie*, Crowell & Moring LLP, of Washington, D.C., for defendant-intervenor Can Tho Import Export Seafood Joint Stock Company.

Stanceu, Judge: Plaintiffs Catfish Farmers of America ("CFA"), an association of U.S. producers of seafood products, together with eight individual U.S. seafood producers, contest an agency determination in an antidumping duty proceeding. The contested determination (the "Final Results") was issued in 2024 by the International Trade Administration, U.S. Department of Commerce ("Commerce" or the "Department") to conclude an administrative review of an antidumping duty order issued in 2003 (the "Order") on certain frozen fish fillets from the Socialist Republic of Vietnam ("Vietnam").

Plaintiffs claim that Commerce unlawfully failed to act in response to what they allege was a failure by a Vietnamese producer to cooperate in the review in responding to information requests and that Commerce unlawfully refused to address what they alleged were clerical errors affecting the Final Results. The court finds merit in their "clerical error" claim and remands the determination to Commerce on that basis.

## I. BACKGROUND

### A. The Contested Decision

The contested determination (the "Final Results") was published as *Certain Frozen Fish Fillets From the Socialist Republic of Vietnam: Final Results and Partial Rescission*

*of Administrative Review; 2021–2022*, 89 Fed. Reg. 18,595 (Int'l Trade Admin. Mar. 14, 2024), P.R. Doc. 561, ECF No. 41 ("*Final Results*").[1]  Commerce incorporated in the Final Results by reference an accompanying "Issues and Decision Memorandum."  *Decision Memorandum for the Final Results of the Antidumping Duty Administrative Review: Certain Frozen Fish Fillets from the Socialist Republic of Vietnam; 2021–2022* (Int'l Trade Admin. Mar. 5, 2024), P.R. Doc. 556, ECF No. 41 ("*I&D Mem.*").

## B.  The Parties

The eight individual U.S. producers bringing this action are America's Catch, Inc., Alabama Catfish, LLC d/b/a Harvest Select Catfish, Inc., Consolidated Catfish Companies, LLC d/b/a Country Select Catfish, Delta Pride Catfish, Inc., Guidry's Catfish, Inc., Heartland Catfish Company, Magnolia Processing, Inc. d/b/a Pride of the Pond, and Simmons Farm Raised Catfish, Inc.  Compl. 1 (May 9, 2024), ECF No. 9. Plaintiff Catfish Farmers of America is a trade association, a majority of whose members produce seafood in the United States that competes with the imported fish fillets that are the subject of the Order (the "subject merchandise").  *Id.* ¶ 2.  Plaintiffs were petitioners in the antidumping duty investigation that culminated in the issuance of the Order.  *Id.*

---

[1] Documents in the Joint Appendix (Mar. 19, 2025), ECF Nos. 32–38 (conf.) and 39–41 (public) are cited herein as "P.R. Doc. __."  Citations to Joint Appendix documents are to the public versions.

Defendant-intervenor Can Tho Import Export Seafood Joint Stock Company

("CASEAMEX") is a Vietnamese exporter of fish fillets that was a respondent in the

review.  *Id.* ¶ 4.

### C.  Proceedings before Commerce

The Final Results concluded the nineteenth administrative review of the Order

and pertained to a period of review ("POR") of August 1, 2021 to July 31, 2022.  *Final*

*Results*, 89 Fed. Reg. at 18,595; *see Notice of Antidumping Duty Order: Certain Frozen Fish*

*Fillets from the Socialist Republic of Vietnam*, 68 Fed. Reg. 47,909 (Int'l Trade Admin.

Aug. 12, 2003) ("*Order*").  The Order applies to fillets of three commercially significant

fishes of the genus *Pangasius*.[2]  *Id*.

Commerce selected CASEAMEX and Vinh Hoan Corporation as "mandatory

respondents" and published "Preliminary Results" of the review on September 7, 2023.

---

[2] The antidumping duty order applies to

> [f]rozen fish fillets, including regular, shank, and strip fillets and portions
> thereof, whether or not breaded or marinated, of the species *Pangasius*
> *Bocourti*, *Pangasius Hypophthalmus* (also known as *Pangasius Pangasius*),
> and *Pangasius Micronemus*.  Frozen fish fillets are lengthwise cuts of whole
> fish.  The fillet products covered by the scope include boneless fillets with
> the belly flap intact ("regular" fillets), boneless fillets with the belly flap
> removed ("shank" fillets), boneless shank fillets cut into strips ("fillet
> strips/finger"), which include fillets cut into strips, chunks, blocks,
> skewers, or any other shape.

*Notice of Antidumping Duty Order: Certain Frozen Fish Fillets from the Socialist Republic of*
*Vietnam*, 68 Fed. Reg. 47,909, 47,909 (Int'l Trade Admin. Aug. 12, 2003).

*Certain Frozen Fish Fillets From the Socialist Republic of Vietnam: Preliminary Results of*

*Antidumping Duty Administrative Review, Preliminary Determination of No Shipments, and*

*Notice of Intent To Rescind, in Part; 2021–2022*, 88 Fed. Reg. 61,525, 61,525 (Int'l Trade

Admin. Sept. 7, 2023), P.R. Doc. 499, ECF No. 41 ("*Prelim. Results*").[3]  Incorporated

therein was a "Decision Memorandum for the Preliminary Results of the Antidumping

Duty Administrative Review: Certain Frozen Fish Fillets from the Socialist Republic of

Vietnam; 2021–2022" (Int'l Trade Admin. Aug. 31, 2023), P.R. Doc. 498, ECF No. 41

("*Prelim. Decision Mem.*").

In the Preliminary Results, Commerce calculated a preliminary weighted-

average dumping margin of $0.14/kg for CASEAMEX and a zero margin for Vinh Hoan

Corporation.  *Prelim. Results*, 88 Fed. Reg. at 61,526.  Commerce also found,

preliminarily, that four exporters established their independence from government

control and thereby would qualify for a "separate rate" (i.e., a rate separate from the

rate Commerce would apply to an entity consisting of exporters that did not establish

independence from government control), which Commerce preliminarily set at $0.14/kg

based on the rate assigned to CASEAMEX.  *Id.* at 61,525–26.

---

[3] Can Tho Import Export Seafood Joint Stock Company ("CASEAMEX") was
selected as "an additional mandatory respondent in this administrative review" after
Commerce rescinded its review of the exporter Bien Dong Seafood Company Ltd.
*Certain Frozen Fish Fillets from the Socialist Republic of Vietnam: Selection of Replacement
Respondent for Individual Review* 1–3 (Int'l Trade Admin. Feb. 3, 2023), P.R. Doc. 204, ECF
No. 39.

For the Final Results, Commerce assigned a weighted-average dumping margin of $0.18/kg to CASEAMEX and again assigned a zero margin to Vinh Hoan Corporation. *Final Results*, 89 Fed. Reg. at 18,596. Commerce continued to find that the same four exporters qualified for a separate rate and assigned them the rate of $0.18/kg, again based on the margin assigned to CASEAMEX. *Id.* at 18,595–96.

### D. Proceedings in the Court of International Trade

Before the court is plaintiffs' motion for judgment on the agency record, brought under USCIT Rule 56.2. Rule 56.2 Mot. for J. on the Agency R. of Pls. Catfish Farmers of Am., *et al.* ("Pls.' Mot.") (Oct. 15, 2024), ECF No. 27.

Defendant argues that the court should reject both of plaintiffs' claims and sustain the Final Results. Def.'s Resp. to Pls.' Mot. for J. Upon the Agency R. 2, 8 (Jan. 16, 2025), ECF No. 29 ("Def.'s Resp."). Defendant-intervenor supports the government's positions. Def.-Intervenor's Resp. in Opp'n to Pls.' Rule 56.2 Mot. for J. on the Agency R. 1 (Feb. 5, 2025), ECF No. 30 ("Def.-Int.'s Resp."). Plaintiffs replied to the oppositions to their motion. Pl. Catfish Farmers of Am.'s Reply Br. (Mar. 5, 2025), ECF No. 31 ("Pls.' Reply").

The court held oral argument on plaintiffs' motion on September 29, 2025. ECF No. 47.

## II.  DISCUSSION

### A.  Jurisdiction and Standard of Review

The court exercises jurisdiction under section 201 of the Customs Courts Act of 1980, 28 U.S.C. § 1581(c), which empowers the court to review actions brought under section 516A of the Tariff Act, 19 U.S.C. § 1516a, including an action contesting a final determination concluding an administrative review of an antidumping duty order, *id.* § 1516a(a)(2)(B)(iii).[4]

In reviewing a final determination, the court "shall hold unlawful any determination, finding, or conclusion found . . . to be unsupported by substantial evidence on the record, or otherwise not in accordance with law."  *Id.* § 1516a(b)(1)(B)(i). Substantial evidence refers to "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *SKF USA, Inc. v. United States*, 537 F.3d 1373, 1378 (Fed. Cir. 2008) (quoting *Consol. Edison Co. of N.Y. v. Nat'l Lab. Rels. Bd.*, 305 U.S. 197, 229 (1938)).

### B.  Claims of the Plaintiffs

Plaintiffs raise two claims in this litigation.  They claim Commerce acted contrary to record evidence, and failed to provide an adequate explanation, in declining to invoke its statutory "facts otherwise available" and "adverse inference" authorities in

---

[4] Citations to the U.S. Code are to the 2024 version.  Citations to the Code of Federal Regulations are to the 2023 version.

response to what they characterize as CASEAMEX's inadequate responses to the

Department's requests for certain information.  Pls.' Mot. 6–10.  They also claim that

Commerce unlawfully refused to consider their allegation that ministerial errors

affected the Final Results.  *Id.* at 6, 10–15.

### C.  Antidumping Duties under the Tariff Act

Section 731 of the Tariff Act provides generally that an "antidumping duty" is

imposed if Commerce "determines that a class or kind of foreign merchandise is being,

or is likely to be, sold in the United States at less than its fair value," and the U.S.

International Trade Commission reaches an affirmative injury or threat determination

with respect to that merchandise.  19 U.S.C. § 1673.  The "antidumping duty" is "equal

to the amount by which the normal value exceeds the export price (or the constructed

export price) for the merchandise."  *Id.*  In an administrative review of an antidumping

duty order, Commerce is directed to "determine— (i) the normal value and export price

(or constructed export price) of each entry of the subject merchandise, and (ii) the

dumping margin for each such entry."  *Id.* § 1675(a)(2)(A).

### D.  Decision Not to Invoke the Facts Otherwise Available and Adverse Inference Authorities under 19 U.S.C. § 1677e

Plaintiffs claim that Commerce, contrary to record evidence and without

adequate explanation, did not invoke its "facts otherwise available" and "adverse

inference" authorities when calculating the $0.18/kg weighted average dumping margin

for CASEAMEX.  Pls.' Mot. 6–10; *see* 19 U.S.C. § 1677e(a) (providing for use of "the facts

otherwise available" when, e.g., requested information is withheld, *id.* § 1677e(a)(2)(A));

*id.* § 1677e(b) (allowing use of an inference adverse to the submitter "in selecting from

among the facts otherwise available" if Commerce "finds that an interested party has

failed to cooperate by not acting to the best of its ability to comply with a request for

information"). Specifically, plaintiffs contend that CASEAMEX failed to meet the

obligations imposed by § 1677e when responding to the Department's requests for

information on its "factors of production" ("FOPs") for packing materials, which

information Commerce would use in determining the normal value of the subject

merchandise. Pls.' Mot. 6–10.

      In a typical antidumping duty investigation or review, Commerce ordinarily

determines the normal value of the subject merchandise based on "the price at which

the foreign like product is first sold" or "offered for sale[] for consumption in the

exporting country." 19 U.S.C. § 1677b(a)(1)(B)(i). Commerce applies a different

procedure for calculating normal value, *see id.* § 1677b(c), when the subject merchandise

is exported from a "nonmarket economy" country, such as Vietnam, that Commerce has

determined "does not operate on market principles of cost or pricing structures, so that

sales of merchandise in such country do not reflect the fair value of the merchandise,"

*id.* § 1677(18)(A). For that situation, the Tariff Act provides that Commerce, if

concluding that available information does not allow it to determine normal value by

one of the ordinary methods provided in the statute, "shall determine the normal value

of the subject merchandise on the basis of the value of the factors of production utilized

in producing the merchandise and to which shall be added an amount for general

expenses and profit plus the cost of *containers*, *coverings*, and other expenses." *Id.*

§ 1677b(c)(1) (emphasis added).

Plaintiffs direct their claim to the Department's calculation of an amount to be

included in normal value for "containers" or "coverings," i.e., the packing costs,

arguing that CASEAMEX did not provide "global packing data" as Commerce

requested. Pls.' Mot. 6–10; Pls.' Reply 1–6. They urge the court to remand the Final

Results to Commerce "with instructions that Commerce explain the basis for

concluding that CASEAMEX cooperated to the best of its ability with the investigation

in light of the fact that CASEAMEX ignored Commerce's direct and repeated request

for global packing data." Pls.' Reply 6.

The Tariff Act does not specify how Commerce must determine an amount for

the cost of containers and coverings. The Department's regulations, in 19 C.F.R.

§ 351.408(c), apply essentially the same method the Tariff Act provides for the valuation

of factors of production used in producing the subject merchandise, under which

Commerce normally values the factors of production using "the best available

information" from "one or more market economy countries that are . . . at a level of

economic development comparable to that of the nonmarket economy country, and . . .

significant producers of comparable merchandise." 19 U.S.C. § 1677b(c)(1), (4). In the

review, Commerce determined the packing costs based on quantity data CASEAMEX

provided on the packing of the subject seafood exported to the United States, rather

than data on packing of products of that kind as produced by CASEAMEX for the

global market as a whole. *I&D Mem.* 12, 17.

Finding that "CASEAMEX reported its packing material FOPs in an acceptable

manner," *id.* at 17, Commerce saw no reason to use the "facts otherwise available"

provision in 19 U.S.C. § 1677e(a), *see id.* Having so concluded, Commerce necessarily

declined to invoke its authority under 19 U.S.C. § 1677e(b). The latter would have

required Commerce to make an affirmative determination under § 1677e(a) before using

an inference adverse to CASEAMEX in calculating the packing costs. Pointing to record

evidence that CASEAMEX did not provide global data for packing materials that

Commerce requested, plaintiffs insist that the court must remand the Final Results for

Commerce to explain why it declined to invoke its authorities under those statutory

provisions. Pls.' Mot. 6–10.

The court denies relief on plaintiffs' claim. Missing from their Rule 56.2 motion

is an argument that Commerce unlawfully determined the packing costs using only

data pertaining to the exported subject merchandise. Instead, they argue,

unpersuasively, that the court must order Commerce to explain "the *basis* for

concluding that CASEAMEX cooperated to the best of its ability" in its response to the

request for "global" FOP data on packing. Pls.' Reply 6 (emphasis added). The "basis"

for the Department's conclusion is apparent from the Issues and Decision

Memorandum: Commerce decided that global FOP data was not necessary to its

packing costs calculation.  *See I&D Mem*. 17.  Having done so, Commerce permissibly

exercised its discretionary authority not to resort to 19 U.S.C. § 1677e.

　　　The closest plaintiffs come to an argument that Commerce unlawfully used the

packing data CASEAMEX provided is their assertion that "the reporting should reflect

the materials used to produce and ship all sales during the POR of the product models

sold to the U.S. market, including sales of those models to the home and any third-

country markets."  Pls.' Mot 7.  They relegate their citation to authority for this

proposition to a footnote citing "Policy Bulletin 10.3," which they characterize by

stating that "Commerce requests all-inclusive reporting to avoid potential manipulation

of the dumping margin," adding that:

> For example, if a respondent made goods destined for the U.S. market in
> hyper-efficient Facility A, while making commercially interchangeable
> goods for the home and third-country markets in less-efficient Facility B,
> the usage rates for materials used solely in producing the goods in
> Facility A would not provide a complete picture of the company's costs
> associated with producing that model of merchandise.

*Id*. at 7 n.2 (citing Import Administration Policy Bulletin No. 10.3 , Factor of Production

Reporting Requirements for Non-Market Economy Companies with Multiple Facilities

and/or Production Processes/Lines (Int'l Trade Admin.),

https://access.trade.gov/Resources/policy/PB-10.3.pdf (last visited Dec. 15, 2025)

("Policy Bulletin").  The Policy Bulletin is not a binding regulation.  Based on the title,

"Factor of Production Reporting Requirements for Non-Market Economy Companies

with Multiple Facilities and/or Production Processes/Lines," it is not clear whether the

Policy Bulletin applied to the situation at hand.  In referring variously to production of

the subject merchandise and like products, the Policy Bulletin does not clarify whether

it is intended to apply to packing costs, which are not mentioned in the text.  Plaintiffs

do not argue, and could not argue plausibly, that the Policy Bulletin confined the

Department's discretion so as to preclude use of the packing information CASEAMEX

submitted.

Plaintiffs argue, further, that a remand to Commerce is required because

Commerce stated, contrary to record evidence, that it did not request global FOP data in

a supplemental questionnaire.  Pls.' Mot. 6, 9; Pls.' Reply 5.  This argument refers to a

statement in the Issues and Decision Memorandum.  Because the pertinent discussion is

contained in a single paragraph (with an indented quotation), the court sets it forth

below in the entirety:

> Finally, we disagree with the petitioners that CASEAMEX did not
> properly report packing FOPs.  The petitioners are correct in pointing out
> that the initial instructions for reporting FOPs note that:
>
>> {u}nless otherwise instructed by {Commerce}, you should
>> report factors information for all models or product types in
>> the U.S. market sales listing submitted . . . in response to
>> Section C of the questionnaire, including that portion of the

production that was not destined for the United States
[citing *Initial Questionnaire* D-1[5]].

However, later, the instructions for reporting FOPs for packing materials
indicate that the respondent should only "{d}escribe the method used to
pack the merchandise under consideration for shipment *to the United
States* [citing *Initial Questionnaire* D-10]. Thus, we find that CASEAMEX
reported its packing material FOPs in an acceptable manner. Moreover,
Commerce never instructed CASEAMEX to report the materials otherwise
in a supplemental questionnaire, and application of facts available is not
warranted.

*I&D Mem*. 17 (footnote citations omitted) (alterations in original). The statement that

"Commerce never instructed CASEAMEX to report the materials otherwise in a

supplemental questionnaire," although ambiguous, could be read to mean that

Commerce did not request global FOP data in a supplemental questionnaire. As

plaintiffs argue, the administrative record is to the contrary. Plaintiffs explain that

Commerce issued a supplemental questionnaire requesting global FOP data after they

objected to CASEAMEX's response to its initial questionnaire.[6] Pls.' Mot. 3.

Nevertheless, even if it were presumed that Commerce erred in making the statement in

---

[5] *Administrative Review of the Antidumping Duty Order on Certain Frozen Fish Fillets from the Socialist Republic of Vietnam: Initial Questionnaire* (Int'l Trade Admin. Feb. 3, 2023), P.R. Doc. 200–03, ECF No. 39.

[6] In a submission responding to CASEAMEX's response to the initial questionnaire, plaintiffs argued that "there are no grounds for CASEAMEX to limit its reporting to only the materials used for shipments to the United States." *Certain Frozen Fish Fillets from the Socialist Republic of Vietnam: Comments and Factual Information Regarding CASEAMEX's Section D Questionnaire Response* 17 (Apr. 17, 2023), P.R. Doc. 334–54, ECF No. 39-2.

question, the statement would not invalidate the agency's decision to use the packing

data CASEAMEX submitted.  The statement is extraneous to the Department's express

finding or conclusion, contained in the previous sentence in the paragraph, that the

submission of FOP data on packing was acceptable for its packing cost calculation.

        The standard of review requires the court to consider whether the Department's

decision to use the submitted packing data has been shown to be unsupported by

substantial evidence or otherwise contrary to law.  Upon reviewing plaintiffs' motion

and the record evidence, in particular the evidence pertaining to the supplemental

questionnaire and the response to it, the court concludes that plaintiffs have made no

such showing.

        Specifically, the supplemental questionnaire requested that CASEAMEX

"resubmit [its] FOP database to include PACKTYPE ['packing type'] FOPs that

incorporate all packing materials associated with each CONNUM [control number]

regardless of whether those packing materials were used for shipments to the United

States."  *Antidumping Duty Administrative Review of Certain Frozen Fish Fillets from the*

*Socialist Republic of Vietnam: CASEAMEX Second Supplemental Questionnaire* 11 (Int'l

Trade Admin. Apr. 25, 2023), P.R. Doc. 401, ECF No. 40-2.  In its response to the request

in the supplemental questionnaire, CASEAMEX explained that it had reported packing

materials "consistent with" the Department's instructions with respect to packing,

which were "to 'report in separate columns each type of packing material and the

quantity used to pack a unit of the *merchandise under consideration for export to the United States*.'" *Certain Frozen Fish Fillets from Vietnam: Supplemental Section C & D Questionnaire Response – Part 1* 29 (May 16, 2023), P.R. Doc. 421, ECF No. 40-2 (emphasis in original). CASEAMEX explained, further, that it therefore "continues to report its packing information based on the packing types for the MUC [merchandise under consideration] sold to the U.S. market." *Id.*

Plaintiffs argue, reasonably, that CASEAMEX submitted an inadequate response to the supplemental questionnaire. *See* Pls.' Mot. 3. Whether or not correct, this argument does not support plaintiffs' claim because Commerce made no finding to that effect, and plaintiffs have not shown that Commerce was required to do so. Commerce found, instead, that the packing data CASEAMEX submitted was acceptable for its use and that there was no need to resort to the facts otherwise available. *I&D Mem.* 17. After receiving the response to the supplemental questionnaire, Commerce issued three additional supplemental questionnaires to CASEAMEX, none of which requested further information on CASEAMEX's packing materials.[7] The record shows that

---

[7] *Antidumping Duty Administrative Review of Certain Frozen Fish Fillets from the Socialist Republic of Vietnam: CASEAMEX Third Supplemental Questionnaire* (Int'l Trade Admin. July 3, 2023), P.R. Doc. 436, ECF No. 40-3; *Antidumping Duty Administrative Review of Certain Frozen Fish Fillets from the Socialist Republic of Vietnam: CASEAMEX Fourth Supplemental Questionnaire* (Int'l Trade Admin. Aug. 1, 2023), P.R. Doc. 461, ECF No. 41; *Antidumping Duty Administrative Review of Certain Frozen Fish Fillets from the Socialist Republic of Vietnam: CASEAMEX [Fifth] Supplemental Questionnaire* (Int'l Trade Admin. Aug. 18, 2023), P.R. Doc. 494, ECF No. 41.

Commerce considered the issue of the packing information, as raised by petitioners in the review, to be resolved.

In summary, plaintiffs have not shown that a factual finding essential to the Department's decision was unsupported by record evidence. On the question of whether the Department's decision was "otherwise not in accordance with law," 19 U.S.C. § 1516a(b)(1)(B)(i), plaintiffs do not argue that it was unlawful for Commerce to use the packing data CASEAMEX submitted, focusing instead on what they view as an inadequate explanation. The discussion in the Issues and Decision Memorandum, although brief, suffices in explaining that Commerce chose to use the actual packing data it was provided rather than use instead any "facts otherwise available" under 19 U.S.C. § 1677e(a). Commerce acted within its discretion in so choosing. Therefore, the court sees no justification or purpose for ordering Commerce to supply a further explanation.

### E. The Department's Rejection of the Ministerial Error Allegation

On March 20, 2024, six days after publishing the Final Results, Commerce issued a "Final Results Analysis Memorandum" containing the calculations for the $0.18/kg dumping margin it assigned CASEAMEX. *Certain Frozen Fish Fillets from the Socialist Republic of Vietnam; 2021–2022: Final Results Analysis Memorandum for Can Tho Import Export Seafood Joint Stock Company* (Int'l Trade Admin. Mar. 5, 2024), P.R. Doc. 566, ECF

No. 41.[8]  Five days later, plaintiffs filed a submission requesting that Commerce "correct

certain ministerial errors" in the calculations that pertained to marine insurance.

*Certain Frozen Fish Fillets from the Socialist Republic of Vietnam: Ministerial Error*

*Comments* 1–2 (Mar. 25, 2024), P.R. Doc. 568, ECF No. 41.

Commerce responded in a letter dated April 2, 2024 (the "Rejection Letter"),

informing Catfish Farmers of America that Commerce "is rejecting" the submission,

which it deemed "an untimely ministerial error allegation."  *Administrative Review of*

*Antidumping Duty Order on Certain Frozen Fish Fillets from the Socialist Republic of Vietnam:*

*Rejection of Untimely Ministerial Error Allegation* 1 (Int'l Trade Admin. Apr. 2, 2024), P.R.

Doc. 573, ECF No. 41 ("*Rejection Ltr.*").  The one-page letter presented the following

reasons for the rejection:

> Pursuant to 19 CFR 351.224(c)(1), comments concerning ministerial errors
> in the preliminary results of a review should be included in a party's case
> brief.  Moreover, 19 CFR 351.309(c)(2) states that a party's "case brief must
> present all arguments that continue in the submitter's view to be relevant
> to the Secretary's final determination or final results . . . ."  The alleged
> ministerial error referenced in your submission was discoverable earlier in
> the proceeding (*i.e.*, immediately following the preliminary results) but
> was not pointed out to Commerce during the time period specified by our
> regulations (*i.e.*, in the petitioners' case brief).  Therefore, consistent with
> our regulations, and controlling judicial precedent, we find that the
> petitioners' submission constitutes an untimely ministerial error
> allegation.

---

[8] The document is dated March 5, 2024, but the electronic stamp on the document
indicates that it was published on the agency's e-filing website on March 20, 2024.

*Id.* (footnote citation omitted).  As "controlling judicial precedent," the letter cited *QVD*

*Food Co., Ltd. v United States*, 658 F.3d 1318, 1328 (Fed. Cir. 2011) ("*QVD*") and *Dorbest*

*Ltd. v. United States*, 604 F.3d 1363, 1376–77 (Fed. Cir. 2010) ("*Dorbest*").  *Id.* at 1 n.2 (also

citing *Stanley Works (Langfang) Fastening Sys. Co., Ltd. v. United States*, 37 CIT 1369, 1402,

964 F. Supp. 2d 1311, 1341 (2013) ("*Stanley Works*") ("Stanley's failure to raise any

ministerial allegations at the time Commerce's calculations were disclosed, or even in

its administrative case brief, is fatal to the claim that it seeks to press here.")).

Commerce excluded the ministerial error allegation from the administrative record of

the review.

Plaintiffs do not contest that what they allege were ministerial errors were

discoverable in the Preliminary Results and that they did not include their ministerial

error allegation in their "case brief," a submission parties make following issuance of

the preliminary results of an administrative review.  Their claim, instead, is that

Commerce unlawfully refused to consider their ministerial error allegation on the

merits.  Pls.' Mot. 10–15.  Among the grounds for their claim is that a regulation

Commerce cited in rejecting the submission, Section 351.224(c)(1) (19 C.F.R.

§ 351.224(c)(1)), is inconsistent with section 751(h) of the Tariff Act, 19 U.S.C. § 1675(h)

("Section 751(h)").  *Id.* at 6, 11–15.

Section 351.224(c)(1) of the Department's regulations expressly addresses the

ministerial error provision in the Tariff Act:

> A party to the proceeding to whom the Secretary has disclosed
> calculations performed in connection with a preliminary determination
> may submit comments concerning a significant ministerial error in such
> calculations.  A party to the proceeding to whom the Secretary has
> disclosed calculations performed in connection with a final determination
> or the final results of a review may submit comments concerning any
> ministerial error in such calculations.  Comments concerning ministerial
> errors made in the preliminary results of a review should be included in a
> party's case brief.

19 C.F.R. § 351.224(c)(1).  Subsection (c)(2) of the regulation provides that "[a] party to

the proceeding must file comments concerning ministerial errors within five days after"

Commerce discloses its calculations to the party.  *Id.* § 351.224(c)(2).  In this case, Catfish

Farmers of America raised their ministerial error allegation within the five-day period

following disclosure of the margin calculations in the Final Results.

　　　In rejecting the ministerial error allegation, Commerce relied not only on

19 C.F.R. § 351.224(c)(1) but also on § 351.309(c), which sets forth rules for the case brief.

*Rejection Ltr.* 1.  Subsection (2) of § 351.309(c) provides, in pertinent part, as follows:

> The case brief must present all arguments that continue in the submitter's
> view to be relevant to the Secretary's final determination or final results,
> including any arguments presented before the date of publication of the
> preliminary determination or preliminary results.

19 C.F.R. § 351.309(c)(2).  Plaintiffs' claim raises the question of whether Commerce

interpreted and applied these regulations contrary to Section 751(h) in rejecting

plaintiffs' ministerial error allegation.  The court concludes that it did.

　　　In considering the two regulations Commerce cited, the court first notes that

these regulations are not necessarily interpreted to require the ministerial error

allegation to have been raised in the case brief.  The court sees ambiguity in 19 C.F.R.

§ 351.224(c)(1), the second sentence of which can be interpreted as mirroring 19 U.S.C.

§ 1675(h) to allow an allegation of a ministerial error in a final determination even if the

alleged error could have been identified in the previous preliminary determination.

Consistent with such an interpretation, the third sentence can be construed to refer only

to the first sentence and to a separate procedure.  Also, the procedure set forth in the

second sentence in 19 C.F.R. § 351.224(c)(1), which is specific to ministerial error

allegations in final determinations, arguably might be construed as taking precedence

over the general exhaustion requirement in § 351.309(c)(2).  Needless to say, the agency

did not adopt these possible interpretations.

     A court ordinarily will consider giving deference (often referred to as "*Auer*"

deference, as addressed in *Auer v. Robbins*, 519 U.S. 452, 462–63 (1997)), to an agency's

interpretation of its own regulation if the regulation is "genuinely ambiguous."  *Kisor v.

Wilkie*, 588 U.S. 558, 563, 574 (2019) (citing *Christensen v. Harris Cnty.*, 529 U.S. 576, 588

(2000); *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414 (1945)).  If so, the court will

afford deference to an agency interpretation that is reasonable, represents an agency's

authoritative or official position, "implicate[s] its substantive expertise," and "reflect[s]

'fair and considered judgment'" by the agency.  *Id.*, 588 U.S. at 575–79 (citation omitted).

In this case, the agency's regulatory scheme may be seen as ambiguous on the issue

of whether the ministerial error allegation was untimely, and were the regulatory

scheme considered apart from Section 751(h), as arguably reasonable.  But where an

agency's interpretation of its regulatory scheme conflicts with a statute, the statute must

control.

To determine whether an agency has "acted within its statutory authority,"

a court must exercise its "independent judgment."  *Loper Bright Enters. v. Raimondo*, 603

U.S. 369, 412 (2024).  In rejecting the ministerial error allegation, Commerce did not act

within the statutory authority delegated by Section 751(h), which addresses ministerial

errors in final determinations issued under section 751 of the Tariff Act, 19 U.S.C.

§ 1675.  The first two sentences of the three-sentence provision are as follows:

> The administering authority [i.e., Commerce] shall establish procedures
> for the correction of ministerial errors in final determinations within a
> reasonable time after the determinations are issued under this section.
> Such procedures shall ensure opportunity for interested parties to present
> their views regarding any such errors.

19 U.S.C. § 1675(h).  The third sentence provides that "[a]s used in this subsection, the

term 'ministerial error' includes errors in addition, subtraction, or other arithmetic

function, clerical errors resulting from inaccurate copying, duplication, or the like, and

any other type of unintentional error which the administering authority considers

ministerial."  *Id.*

Section 751(h) is directed expressly to "ministerial errors *in final determinations*,"

*id.* (emphasis added), issued under section 751 of the Tariff Act, which pertains to

reviews of antidumping duty orders.  The Final Results, issued under Section 751(a),

were such a determination.  In this case, Commerce did not decide whether the alleged

ministerial error was "in" a "final determination[]" of the type identified in the statute.

*See id*.  Contrary to the directive in the second sentence in Section 751(h), Commerce did

not "ensure" that Catfish Farmers of America had the "opportunity . . . to present their

views regarding" what they alleged to be a ministerial error in the final determination

Commerce issued in the review.  *See id*.  Catfish Farmers of America were denied that

opportunity when Commerce rejected their ministerial error allegation and excluded it

from the record.  Nor did the Department's interpretation of its regulations give effect

to the use of the unambiguous term "*any* such errors" in that same sentence.  *See id*.

(emphasis added).  Instead, it allowed parties to raise only *some* allegations of

ministerial errors in final determinations—those that could not have been discovered in

time to be raised in the case brief—after issuance of a final determination under

Section 751.  In these several respects, Commerce applied procedures that did not

satisfy the express requirement of Section 751(h).

What the Rejection Letter characterized as "controlling judicial precedent"

misinterprets the appellate cases upon which it relies.  *See Rejection Ltr*. 1 n.2 (citing

*QVD*, 658 F.3d at 1328 and *Dorbest*, 604 F.3d at 1376–77).  The holdings of these cases are

not controlling on whether Commerce complied with Section 751(h).

*Dorbest* involved an attempt to raise a ministerial error allegation for the first

time in a judicial remand proceeding.  As the U.S. Court of Appeals for the Federal

Circuit ("Court of Appeals") stated, "AFMC [a group of domestic interested parties] had not raised the issue either during the ministerial comment period at Commerce or in its complaint or earlier briefing to the CIT," adding that "Commerce refused to consider the issue during the remand proceedings, and the CIT affirmed Commerce's decision, holding that AFMC had waived the issue by not raising it during its multiple opportunities to do so in a timely manner." *Dorbest*, 604 F.3d at 1375–76.

QVD is also distinguishable from this case. There, the alleged error was held to be intentional, not ministerial. 658 F.3d at 1328 ("Because the error alleged by QVD is not an arithmetic or clerical error or similar inadvertent mistake, it does not fall within the statutory definition of 'ministerial error.'"). The Court of Appeals, citing *Dorbest*, opined that even had the alleged error been ministerial, the objection would have been untimely according to 19 C.F.R. §§ 351.224(c)(1) and 351.309(c)(2), noting the alleged error could have been identified in the preliminary results. *Id*. The discussion of untimeliness is *dicta*; moreover, *QVC* did not address the issue presented here, which is whether those regulations were applied consistently with Section 751(h). *Stanley Works* is also inapposite. The allegation in that case was made neither in the case brief nor during the five-day period provided in 19 C.F.R. § 351.224(c)(2). 37 CIT at 1401–03, 964 F. Supp. 2d at 1340–42. Nor does the opinion discuss consistency of the regulations with 19 U.S.C. § 1675(h).

In opposing plaintiffs' motion, defendant argues, first, that the court must reject

plaintiffs' challenge as a "facial challenge to Commerce's regulatory scheme,"

maintaining that plaintiffs cannot succeed in such a challenge unless they "'establish

that no set of circumstances exists under which the {regulation} would be valid.'"  Def.'s

Resp. 20 (quoting *Parkdale Int'l, Ltd. v. United States*, 31 CIT 1229, 1236, 508 F. Supp. 2d

1338, 1347 n.5 (2007) (in turn citing *United States v. Salerno*, 481 U.S. 739, 745 (1987)).  The

court rejects this argument.  The court must ascertain the true nature of a plaintiff's

claim, and for several reasons, the court rejects defendant's characterizing plaintiffs'

claim as a "facial challenge" to the Department's "regulatory scheme."

First, plaintiffs stated their claim in general terms: "Commerce's decisions to

reject CFA's ministerial comments and to allow the clear error in its margin program to

go uncorrected are not supported by substantial evidence, are inadequately explained,

and are otherwise contrary to law."  Compl. ¶ 11.  In their Rule 56.2 motion, plaintiffs

similarly express their claim broadly.  Presenting the claim under the heading

"Commerce's Treatment of CFA's Ministerial Error Allegation Was Unlawful," Pls.'

Mot. 10, plaintiffs used broad language in describing the issue the court is to decide:

"Whether Commerce erred in refusing to correct a ministerial error in its final margin

calculations relating to CASEAMEX's marine insurance, despite Congress's clear

instruction that the agency correct ministerial errors present in its final margin

calculations."  *Id*. at 2.

Second, plaintiffs identify in their motion all the sources of law upon which

Commerce based the Rejection Letter, i.e., "the agency's regulations [19 C.F.R.

§§ 351.224(c)(1) and 351.309(c)(2)] and the [Court of Appeals'] decisions in *Dorbest*, *QVD*

*Foods*, and a 2013 decision of this Court that relied on those decisions [*Stanley Works*]."

*Id*. at 13–14. In supporting their claim, plaintiffs challenge 19 C.F.R. § 351.224(c)(1) as

inconsistent with Section 751(h), but this is but one of the grounds on which plaintiffs

support their claim, among which grounds also was the agency's allegedly unlawful

application of § 351.309(c)(2). *Id*. at 11 ("Commerce created a regulation . . . that states

that where a correctable, inadvertent calculation error that is present in its final

calculations was also present in its preliminary calculations, the agency cannot and will

not correct the error unless it was raised in a party's case brief. 19 C.F.R. § 351.224(c)(1);

*see also id*. § 351.309(c)(2)."). While 19 C.F.R. § 351.224(c)(1) might be interpreted, by

itself and on its face, to disqualify plaintiffs' ministerial error allegation, that is not the

only possible interpretation, and plaintiffs recognize that the agency did not disqualify

the ministerial error allegation based solely on that provision. In short, plaintiffs'

challenge to the decision made in the Rejection Letter implicates all the grounds upon

which Commerce issued it.

Finally, plaintiffs do not pursue the invalidation of 19 C.F.R. § 351.224(c)(1).

Instead, they seek as a remedy an order that would "remand . . . the agency's rejection

as untimely of CFA's ministerial error allegation," *id*. at 16, and direct Commerce to

"consider on the merits CFA's March 26, 2024 allegation of ministerial errors in the final

margin calculations," *id*. at Draft Order 2.[9]

In conclusion, defendant mischaracterizes plaintiffs' claim as a "facial challenge

to Commerce's regulatory scheme." Def.'s Resp. 20. The essence of plaintiffs' claim is

that the agency's decision, viewed according to the reasoning stated in the Rejection

Letter, violated Section 751(h) and must be set aside. A court reviews an agency's

decision on the reasoning the agency put forth. *Burlington Truck Lines, Inc. v. United

States*, 371 U.S. 156, 167–69 (1962). The court declines defendant's invitation to reject

plaintiffs' claim through the artifice of an overly narrow interpretation.

Defendant next argues that plaintiffs "[m]isinterpret[]" Section 751(h), Def.'s

Resp. 21, which in its view "does not mandate Commerce to entertain all allegations of

ministerial errors in final results in every circumstance[,] but the statute directs

Commerce to establish a process for parties to 'present their views regarding any such

errors,' with the goal of alleviating parties' need to seek judicial review to remedy such

errors," *id.* at 22 (citations omitted). It is not plaintiffs but defendant who misinterprets

Section 751(h). As plaintiffs argue, the rejection of their ministerial error allegation

contradicted the plain language of the statute. *See* Pls.' Mot. 12 ("The statute's text does

not express any intent to exclude from its ambit ministerial errors that, while present 'in

---

[9] Plaintiffs submitted their ministerial error allegation on March 25, not March 26, of 2024. *Certain Frozen Fish Fillets from the Socialist Republic of Vietnam: Ministerial Error Comments* (Mar. 25, 2024), P.R. Doc. 568, ECF No. 41.

final determinations,' may also have been present in relevant preliminary

determinations.").  The statute refers only to ministerial errors in final determinations,

and it uses the unambiguous terms "in," "ensure," and "any."  To satisfy Section 751(h),

the Department's procedures must "ensure" that an interested party has the

"opportunity . . . to present" its "views" *after*, and not necessarily before, the

determination is issued.[10]

     Relying on case law, defendant argues that Commerce had "[i]nherent and

[e]xplicit authority" to create what it characterizes as "procedural requirements,"

including, in its view, a rule requiring an allegation of a ministerial error affecting

preliminary results of a review to be presented in the case brief.  Def.'s Resp. 29–32.

When weighed against the language of Section 751(h), this argument is unconvincing.

---

[10] The report of the Ways and Means Committee, U.S. House of Representatives, on what was later enacted as Section 751(h) does not contain a reference to exhaustion of administrative remedies.  Nevertheless, it demonstrates that Congress sought to provide for the routine and expeditious correction of ministerial errors in final determinations under 19 U.S.C. § 1675:

     It has come to the Committee's attention that certain final determinations contain clerical and other errors which are not corrected, under current procedures, unless the parties to the proceedings resort to judicial review of the final determination.  The result is expensive litigation that unnecessarily burdens the court system, in order to correct essentially unintended errors.  Therefore, the Committee has adopted this provision to allow for the correction of ministerial errors in final determinations within a limited time period after their issuance.

H.R. Rep. No. 100–40, pt. 1, at 144 (1987).

Defendant relies on *Vt. Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*, 435 U.S.

519, 543 (1978) ("*Vermont Yankee*"), *Royal Brush Mfg., Inc. v. United States*, 75 F.4th 1250,

1261 (Fed. Cir. 2023) ("*Royal Brush*"), *Dongtai Peak Honey Indus. Co., Ltd. v. United States*,

777 F.3d 1343, 1351 (Fed. Cir. 2015) (*"Dongtai Peak"*), and *M S Int'l, Inc. v. United States*,

32 F.4th 1145, 1153 (Fed. Cir. 2022) ("*MS Int'l*"). *Id.* at 29–30. Each of these cases is

inapposite.

   *Vermont Yankee* has no relevance to this dispute. Quoting a single sentence from

the opinion of the U.S. Supreme Court, defendant maintains that "[a] fundamental

principle to administrative law is that '{a}bsent constitutional constraints or extremely

compelling circumstances the administrative agencies should be free to fashion their

own rules of procedure and to pursue methods of inquiry capable of permitting them to

discharge their multitudinous duties.'" *Id.* at 29 (quoting *Vt. Yankee*, 435 U.S. at 543)

(internal citations and quotations omitted). The Supreme Court made this statement in

the context of instances in which, it concluded, the U.S. Court of Appeals for the District

of Columbia Circuit overreached in exercising its judicial review role by imposing its

own procedural requirements, which the Supreme Court considered to be beyond those

provided for by statutes governing licensing of nuclear power plants by the U.S. Atomic

Energy Commission and by the Administrative Procedure Act. *See id.*, 435 U.S. at

525–27, 548, 557–58. In contrast, the issue in this case is not whether plaintiffs' claim

would have this Court impose a procedural requirement beyond those *granted* in

Section 751(h) of the Tariff Act or the Administrative Procedure Act.  This case presents

the opposite question: whether the Department's application of its procedural rules

*denied* plaintiffs a substantive right, afforded them by statute, to raise a specific type of

claim before the agency.  Using terms appearing in Section 751(h), plaintiffs identify

that right as the "opportunity . . . to present their views" that a ministerial error existed

"in" a final determination issued under 19 U.S.C. § 1675.  *See* Pls.' Mot. 11–13.

*Royal Brush* lends nothing to defendant's argument.  The Court of Appeals held

that U.S. Customs and Border Protection, contrary to the argument the government

advanced on that agency's behalf, had inherent authority to fashion a protective order

so that a party to an adjudicative proceeding under the Enforce and Protect Act

("EAPA") could have the benefit of its counsel's access to confidential business

information in the agency's possession, as due process required.  *Royal Brush*, 75 F.4th

at 1253–55, 1258–62; *see also id.* at 1261 ("The EAPA statute and associated regulations

do not bar protective orders.").

In *Dongtai Peak,* the Court of Appeals held that Commerce acted within its

discretion when it rejected, and excluded from the administrative record of an

antidumping duty proceeding, a party's requests for extension of filing deadlines and a

supplemental response, all of which were submitted untimely.  777 F.3d at 1347, 1351.

*Dongtai Peak* sheds no light on the issue presented here, which is whether agency

procedures were applied contrary to a statutory directive that an agency establish

procedures under which it is to allow interested parties to present a particular type of claim.

Like this case, *M S Int'l* involved interpretation of a Tariff Act provision, but it also is inapposite. The provision involved was 19 U.S.C. § 1677c(a)(1), which directs Commerce to "hold a hearing in the course of an [antidumping or countervailing duty] investigation upon the request of any party to the investigation before making a final determination." *M S Int'l*, 32 F.4th at 1153. The claim in that case contested the Department's regulation imposing, in 19 C.F.R. § 351.310(c) (2018), a procedural requirement that a request for a hearing be made within 30 days of publication of a preliminary determination. *M S Int'l*, 32 F.4th at 1149–50, 1152–53. The Court of Appeals concluded that Commerce had authority to set such a deadline "where the statute is silent." *Id.* at 1153 (citations omitted). While the case at bar presents the question of whether Commerce had authority to impose a procedural limitation, it involves a statute that is anything but silent on the question plaintiffs' claim presents.

In further support of its contention that Commerce acted within its authority in refusing to consider the ministerial error allegation, defendant points to 19 U.S.C. § 3513(a)(2), which delegated to Commerce authority to adopt regulations to implement the Uruguay Round Agreements Act, Pub. L. No. 103–465, 108 Stat. 4809 (Dec. 8, 1994). Def.'s Resp. 30. It cannot seriously be contended that in enacting such a general

rulemaking provision Congress delegated to Commerce the authority to abridge a right

granted by another statute.

Finally, defendant argues that the limitation Commerce imposed is supported by

the principles of exhaustion of administrative remedies and finality.  *Id*. at 32–35.

Defendant-intervenor makes a similar argument.  Def.-Int.'s Resp. 14–15.  Further to its

argument, defendant maintains that Section 751(h), § 351.224(c)(1), and § 351.309(c)(2)

are in harmony with the statutory exhaustion requirement set forth in 28 U.S.C.

§ 2637(d) because these provisions "promote judicial economy and discourage

litigation."  Def.'s Resp. 33.

It can be argued that in enacting Section 751(h) Congress was aware of the

general, and longstanding, administrative law principle under which courts require

exhaustion of administrative remedies as a condition of obtaining judicial review of an

agency decision, as demonstrated by, e.g., 28 U.S.C. § 2637(d) (providing that this Court

shall require exhaustion of administrative remedies "where appropriate").  According

to such an argument, had Congress intended to create an exception to this general

principle, it would have so provided in the text of Section 751(h) or at least referred to

such an exception in the legislative history.  A canon of statutory interpretation is that

Congress should be presumed to have been aware of existing law, which in this

instance would include law on the principle of exhaustion of administrative remedies,

when enacting Section 751(h).  *See Hall v. United States*, 566 U.S. 506, 516 (2012) ("'We

assume that Congress is aware of existing law when it passes legislation.'") (quoting

*Miles v. Apex Marine Corp.*, 498 U.S. 19, 32 (1990)).  But another canon of statutory

interpretation is that a court should "'give effect[] . . . to every clause and word of a

statute.'"  *Williams v. Taylor*, 529 U.S. 362, 404 (2000) (quoting *United States v. Menasche*,

348 U.S. 528, 538–39 (1955)).  Applying this principle in interpreting Section 751(h),

the court concludes that Congress considered allegations of ministerial errors to be distinct

from the general class of allegations of errors by Commerce that ordinarily are heard in

this Court.  Desiring to avoid unnecessary litigation, Congress chose wording in

Section 751(h) that provided for administrative correction of ministerial errors after

issuance of a final determination and, in so doing, left no room for an interpretation

allowing Commerce to impose the particular exhaustion requirement that it did in this

case.  Here, plaintiffs satisfied the required exhaustion of administrative remedies when

they submitted their ministerial error allegation prior to judicial review and within the

time period allowed by 19 C.F.R. § 351.224(c)(2).  Had they not done so, the exhaustion

doctrine likely would have precluded their obtaining a remedy for their claim.  *See*

*Dorbest*, 604 F.3d at 1375–76.

     Defendant-intervenor argues, further, that the ministerial error allegation failed

to allege what actually is a ministerial error, maintaining that the Department's

treatment of marine insurance was "an intentional methodological choice."  Def.-Int.'s

Resp. 13.  This argument also must be rejected.  The issue of whether the ministerial

error allegation sufficed to require Commerce to make a correction is not yet before the

court, Commerce having refused to decide it for the Final Results and having excluded

the allegation from the record.  *See Rejection Ltr.*

### F.  Plaintiffs' Request for a Remand

As a remedy on their motion for judgment on the agency record, plaintiffs

"request[] that the Court remand Commerce's decision not to employ an adverse

inference with respect to CASEAMEX's packing factors reporting, the agency's rejection

as untimely of CFA's ministerial error allegation, and Commerce's determination of the

separate rate."  Pls.' Mot. 16.[11]

### III.  CONCLUSION AND ORDER

Based on the foregoing discussion, the court denies relief on plaintiffs' claim

concerning reporting of packing factors.

The court grants relief on plaintiffs' challenge to the rejection of their ministerial

error allegation.  Having rejected the allegation as untimely and improperly excluding

it from the administrative record of the review, Commerce now must decide whether

the Final Results were adversely affected by the alleged ministerial error or errors, in

---

[11] This Court contemporaneously is ordering a remand in a related case contesting separate aspects of the Final Results.  *Luscious Seafood LLC v. United States*, Court No. 24-00069 (Dec. 15, 2025) ("*Luscious Seafood*").  A revision that Commerce makes on remand in the present case may affect the outcome in *Luscious Seafood*. Should the agency so choose, it may issue a single redetermination in response to the court's orders in both cases.

accordance with the definition in Section 751(h).  If Commerce decides such an error or errors were present, it must make the appropriate correction.

Therefore, upon consideration of plaintiffs' motion for judgment on the agency record, upon all papers and proceedings had herein, and upon due deliberation, it is hereby

**ORDERED** that the Rule 56.2 Motion for Judgment on the Agency Record of Plaintiffs Catfish Farmers of America, *et al.* (Oct. 15, 2024), ECF No. 27, is hereby granted in part and denied in part; it is further

**ORDERED** that Commerce shall admit to the record the previously excluded ministerial error allegation submitted by Catfish Farmers of America; it is further

**ORDERED** that Commerce shall decide whether the alleged ministerial error or errors exist in the Final Results and provide reasoning for its decision, ensuring that any factual findings are supported by substantial record evidence; it is further

**ORDERED** that if Commerce finds that the ministerial error or errors alleged by Catfish Farmers of America exist in the Final Results, it shall make the appropriate correction and revisions to the rates that would be assigned to CASEAMEX and the separate rate respondents, respectively; it is further

**ORDERED** that the decision Commerce issues in response to this Opinion and Order (the "Remand Redetermination") shall be filed with this Court within 30 days of the date of this Opinion and Order; it is further

**ORDERED** that plaintiffs and defendant-intervenor shall have 30 days from the filing of the Remand Redetermination to file with this Court comments thereon; and it is further

     **ORDERED** that defendant shall have 15 days from the filing of the last comment submission to file its response to the comments submitted.

                                          _/s/ Timothy C. Stanceu_
                                          Timothy C. Stanceu
                                          Judge

Dated: December 15, 2025
      New York, New York